[Cite as *In re M Children*, 2019-Ohio-484.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

IN RE: THE M CHILDREN

:

APPEAL NO. C-180564
TRIAL NO. F12-0001X

:

*O P I N I O N.*

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: February 13, 2019

*Jeffrey J. Cutcher*, for Appellant Mother,

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Lee Slocum*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Raymond T. Faller*, Hamilton County Public Defender, and *Robert Adam Hardin*, Assistant Public Defender, Guardian ad Litem for N.M. and A.M.

**MYERS, JUDGE.**

{¶1}   Mother has appealed from the trial court's entry granting permanent custody of her children N.M. and A.M. to the Hamilton County Department of Job and Family Services ("HCJFS").

{¶2}   In three assignments of error, mother argues that the trial court erred by failing to conduct a sufficient inquiry into her waiver of counsel; that the trial court erred by allowing counsel to withdraw absent compliance with Loc.Juv.R. 12(D) and absent any request by counsel to withdraw; and that the trial court erred by allowing counsel to withdraw absent an inquiry into the communication between counsel and mother.

{¶3}   Because, under the unique facts of this case, the trial court failed to conduct a sufficient inquiry to determine whether mother had the necessary competence to waive her right to counsel, and failed to determine whether mother had in fact knowingly, voluntarily, and intelligently elected to waive that right, we reverse its judgment.

### Factual Background

{¶4}   In October 2015, HCJFS filed a complaint seeking temporary custody of N.M. and A.M.  Scott Hoberg was appointed by the court to serve as mother's counsel, which he did until February 17, 2016, when James Whitfield entered an appearance as counsel for mother.  N.M. and A.M. were adjudicated dependent, and in January 2017, a juvenile court magistrate granted temporary custody of the children to HCJFS.

{¶5}    At a motion hearing on May 26, 2017, mother and Whitfield asked the magistrate to note in an entry that mother desired alternate counsel.  The matter was continued at mother's request until July 6, 2017, in order for her to obtain new counsel.  The magistrate conducted a motion hearing on July 6, 2017, but mother failed to appear and no attorney entered an appearance on her behalf.

{¶6}    In August 2017, HCJFS filed a motion to modify temporary custody to permanent custody.  Erika Dority was appointed to serve as mother's counsel.  A pretrial hearing took place on October 10, 2017.   In an order summarizing that hearing, the magistrate continued the matter until November 21, 2017, and stated that:

> [Mother] informed Ms. Dority she had retained counsel but did not provide a name.  Ms. Dority requested the matter be set for a pre-trial for appearance of counsel.  This matter, instead, is set for trial.  If [mother] does not participate in preparing for trial, the court will look with favor upon Ms. Dority's future request to be withdrawn.   If counsel is retained, retained counsel must be prepared to go forward on the trial date.

{¶7}    When the parties appeared before the court on November 21, 2017, for trial, Dority requested another continuance after informing the court that mother was vacillating between proceeding with retained counsel and appointed counsel, and that mother had only recently informed Dority of potential witnesses.   The magistrate granted the requested continuance over the objections of HCJFS and the children's guardian ad litem.

{¶8} At the next hearing on January 29, 2018, Dority asked the court to appoint a guardian ad litem for mother because mother had been unable to assist Dority in preparing a defense and had requested that Dority engage in actions that Dority deemed unethical and frivolous. The magistrate granted Dority's request and again continued the matter, stating "[n]ow I'll caution [mother] that we're going forward the next time, and her rights are going to be protected by Ms. Dority or new counsel or the Guardian, but we can't just sit on this case." The magistrate further informed mother that "[y]ou're going to have to assist the folks in preparing a defense, absent your assistance, I have to proceed with the case. So if you show up the next time and there hasn't been ample communication with Ms. Dority, perhaps you'll have better luck with this other attorney, an attorney guardian ad litem, but I can't just put this case on hold." He explained to mother that she would "be approached by another attorney that will seek information from you. But if [sic] that doesn't reduce or eliminate your obligation to use Ms. Dority to your best effect so that you can have adequate representation." Robyn Cambron was appointed as mother's guardian ad litem.

{¶9} The parties next appeared before the court on April 26, 2018. Outside mother's presence, Dority told the magistrate that mother had "fired" her on April 9, and that she had not communicated with mother since that date and was not prepared for trial. Cambron stated that mother had paid a private attorney—Patrick Mulligan—to represent her, and that Mulligan had instructed mother to request a continuance. HCJFS and the children's guardian ad litem objected to the case being continued.

{¶10} The magistrate conveyed these pretrial discussions to mother. Mother initially stated that Dority's statements were not true, explaining that she had not spoken to Dority in over a month and that Dority would not answer her phone or do her job. But mother then conceded that she had "fired" Dority, stating, "I fired her and went yesterday and paid for a new attorney, because I feel like this is my—you know, this is my life." The magistrate declined to continue the matter, stating, "We're going to proceed today. We will permit Ms. Dority to withdraw, at your request, and we'll find out what remedies Mr. Mulligan can pursue on your behalf once he enters an appearance." The case then proceeded to trial on HCJFS's motion for permanent custody. Mother represented herself. And the guardian ad litem also participated.

{¶11} The magistrate granted permanent custody of N.M. and A.M. to HCJFS. The trial court overruled mother's objections to the magistrate's decision and adopted the decision as its own.

### *Waiver of Counsel*

{¶12} In her first assignment of error, mother argues that the trial court erred by failing to conduct a sufficient inquiry regarding her waiver of counsel.

{¶13} Parental termination cases have been likened to the family-law equivalent of the death penalty in a criminal case. *In re R.K.*, 152 Ohio St.3d 316, 2018-Ohio-23, 95 N.E.3d 394, ¶ 1. Consequently, "it is critical that the rights of a parent who faces the permanent termination of parental rights are appropriately protected." *Id.* To ensure protection of these rights, parents have a statutory right to counsel in parental-termination cases pursuant to R.C. 2151.352 and Juv.R. 4. *Id.*; *In re W.W.E.*, 2016-Ohio-4552, 67 N.E.3d 159, ¶ 25-26 (10th Dist.).

{¶14} R.C. 2151.352 provides that "[a] child, the child's parents or custodian, or any other person in loco parentis of the child is entitled to representation by legal counsel at all stages of the proceedings under this chapter or Chapter 2152. of the Revised Code." Juv.R. 4(A) similarly provides that "[e]very party shall have the right to be represented by counsel and every child, parent, custodian, or other person in loco parentis the right to appointed counsel if indigent. These rights shall arise when a person becomes a party to a juvenile court proceeding."

{¶15} A parent can waive the right to counsel in a parental-termination action. *In re R.K.* at ¶ 5; *In re W.W.E.* at ¶ 36. In determining whether a parent has waived the right to counsel, courts have considered whether the waiver was knowingly, intelligently, and voluntarily made. *In re W.W.E.* at ¶ 36. Several appellate districts have held that a parent's waiver of counsel in a parental-termination proceeding may be inferred. These courts have inferred a waiver of the right to counsel where "the total circumstances of the individual case, including the background, experience and conduct of the parent" indicate that the parent has waived the right to counsel. *In re Rachal G.*, 6th Dist. Lucas No. L-02-1306, 2003-Ohio-1041, ¶ 14; *In re W.W.E.* at ¶ 39; *In re A.S.*, 8th Dist. Cuyahoga Nos. 94098 and 94104, 2010-Ohio-1441, ¶ 27. Inferred waivers have been found in circumstances where a parent has repeatedly failed to communicate with counsel or attend scheduled hearings. *See In re A.S.* at ¶ 30.

{¶16} This court has not previously addressed whether a parent's waiver of counsel in a parental-termination proceeding can be inferred. And we are not required to make such a determination in this case because, based on the unique

circumstances before us, particularly the finding of mother to be seemingly incompetent, we find neither an express nor an inferred waiver of counsel by mother.

{¶17} As to an express waiver, prior to beginning the permanent-custody trial, the magistrate failed to engage mother in any kind of colloquy to determine whether she wanted to waive her right to counsel. Rather, after being told by mother that she had fired Dority and retained other counsel who was unable to attend the hearing, the magistrate allowed Dority to withdraw. He then denied a continuance for mother to secure the presence of her reportedly newly retained counsel, and conducted the permanent-custody trial, with mother proceeding pro se, without making any finding regarding mother's waiver of counsel and without determining whether mother knowingly, voluntarily, and intelligently waived her right. In fact, mother's indication that she had retained counsel indicates she had not expressly waived her right to counsel.

{¶18} As to an inferred waiver, in his subsequent decision granting permanent custody of the children to HCJFS, the magistrate summarized mother's history with counsel and found that mother's waiver of counsel could be inferred based on the circumstances and history of the case. He held that:

> [Mother] has a fundamental liberty right at issue and therefore the court must make what efforts it can to protect her right to counsel. If, as alleged in the dependency complaint, [mother] was making choices that put her own safety at risk, the court must make some allowances for poor choices. Ohio Revised Code 2151.414(A)(2) directs the court to proceed on a hearing of this nature within one hundred and twenty days of the filing of the action. To grant the requested continuance

would have delayed the matter more than two times what the statute permits. The court finds, by her actions, [mother] waived counsel.

{¶19} While under different circumstances a waiver might be inferred, under these facts, no waiver could be inferred. We are troubled by the magistrate's failure to address mother's inferred waiver of counsel and her competency to proceed on her own behalf prior to beginning the permanent-custody trial, particularly because the court found that mother appeared to be incompetent and appointed a guardian ad litem. In addition, Dority represented that mother was unable, as opposed to unwilling, to assist in preparing a defense. This served not only as a basis for her withdrawal as counsel, but also for the appointment of a guardian ad litem for mother.

{¶20} R.C. 2151.281(C) provides that "[i]n any proceeding concerning an alleged or adjudicated delinquent, unruly, abused, neglected, or dependent child in which the parent appears to be mentally incompetent or is under eighteen years of age, the court shall appoint a guardian ad litem to protect the interest of that parent." By appointing a guardian ad litem to protect mother's interests, the magistrate necessarily determined that mother appeared to be mentally incompetent. But he then allowed this seemingly incompetent person to "fire" her attorney, allowed counsel for the mentally incompetent mother to withdraw, and required mother to proceed pro se. Even with the prior delays and prior conduct of mother, a waiver under such circumstances cannot be inferred, without more.

{¶21} The record also indicates that the magistrate did not accurately disclose to mother the specific role of the guardian ad litem, which is to protect mother's best interest, and not necessarily to advocate mother's wishes. *See In re*

*Baby Girl Baxter*, 17 Ohio St.3d 229, 232, 479 N.E.2d 257 (1985) (differentiating the roles of an attorney and a guardian ad litem, and holding that "[t]he role of guardian ad litem is to investigate the ward's situation and then to ask the court to do what the guardian feels is in the ward's best interest. The role of the attorney is to zealously represent his client within the bounds of the law."); *In re K.J.D.*, 10th Dist. Franklin Nos. 12AP-652 and 12AP-653, 2013-Ohio-610, ¶ 47. When granting a continuance so that the guardian could be appointed, the magistrate stated to mother, "Now I'll caution [mother] that we're going forward the next time, and her rights are going to be protected by Ms. Dority or new counsel or the Guardian, but we can't just sit on this case." It was inaccurate for the magistrate to equate the role of mother's guardian ad litem with that of her counsel. Because mother's guardian ad litem was present for the permanent-custody trial, mother could have believed that the guardian was acting as her counsel, not just as her guardian.

{¶22} Further undermining the magistrate's determination that a waiver of counsel could be inferred was mother's declaration that she had already retained a new attorney. Such action by mother diminishes a finding that mother had knowingly, voluntarily and intelligently waived the right to counsel based on her conduct. And we note that at least one of the reasons the magistrate appointed a guardian ad litem was because mother failed to cooperate with her attorney. If such conduct indicates she is incompetent, it cannot then serve as a basis to find that mother knowingly waived counsel.

{¶23} We understand and share the magistrate's concerns regarding mother's history with changing counsel and the amount of time the children had been in the custody of HCJFS. But under the unique facts of this case, where the trial

court had found mother to be seemingly incompetent and appointed a guardian ad litem for her, and where mother had informed the court that she had retained a new attorney, we hold that it was error for the court to find that mother had waived her right to counsel without engaging in an inquiry to determine whether mother was in fact competent to do so and whether mother was knowingly, intelligently, and voluntarily waiving that right, even if by inference from her conduct.

{¶24} Mother's first assignment of error is sustained. The second and third assignments of error are rendered moot by our resolution of the first assignment of error, and we decline to address them.

### Conclusion

{¶25} Because the magistrate failed to engage in a sufficient colloquy to determine if mother was competent to waive the right to counsel and whether mother had knowingly, intelligently, and voluntarily waived that right, we reverse the trial court's judgment granting permanent custody of N.M. and A.M. to HCJFS. This cause is remanded for further proceedings consistent with the law and this opinion.

Judgment reversed and cause remanded.

MOCK, P.J., and HENDON, J., concur.

SYLVIA S. HENDON, retired, from the First Appellate District, sitting by assignment.

Please note:
     The court has recorded its own entry on the date of the release of this opinion.