[Cite as *In re H. Children*, 2020-Ohio-774.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: THE H. CHILDREN. | : | APPEAL NO. C-190630<br>TRIAL NO. F12-0022Z |
| | : | |
| | : | *O P I N I O N.* |

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: March 4, 2020

*Jeffrey J. Cutcher*, for Appellant Father,

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Patsy Bradbury*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Sevices,

*ProKids, Inc.*, and *Paul Hunt*, for Guardian ad Litem and Court Appointed Special Advocate,

*Treleven and Klingensmith Law LLC* and *Celia Klug Weingartner*, for K.H.

**MOCK, Presiding Judge.**

{¶1} Appellant father appeals the decision of the Hamilton County Juvenile Court awarding permanent custody of his two children, D.H. and K.H., to appellee Hamilton County Department of Job and Family Services ("HCJFS"). We find no merit in father's two assignments of error, and we affirm the trial court's judgment.

### I. Factual Background

{¶2} The record shows that D.H. was born on March 17, 2016. On April 6, 2016, HCJFS filed a complaint and a motion for interim custody regarding D.H. The complaint alleged that the parents had issues with homelessness, substance abuse, and domestic violence. Father appeared at the hearing on April 6, 2016, and the court appointed an attorney to represent him.

{¶3} On September 7, 2016, D.H. was adjudicated neglected and dependent and was placed in the temporary custody of HCJFS. At that time, father's counsel was permitted to withdraw after father failed to appear at multiple hearings and to maintain contact with counsel. The court subsequently appointed another attorney to represent father.

{¶4} HCJFS filed a case plan. Mother engaged in some services, but made insufficient progress on the case-plan goals. Father did not engage in any services. On September 8, 2017, HCJFS filed a motion to modify temporary custody of D.H. to permanent custody.

{¶5} K.H. was born on May 5, 2017. On September 8, 2017, the juvenile court journalized an emergency ex parte order granting interim custody of K.H. to HCJFS. That same day, HCJFS also filed a complaint for permanent custody of K.H. That complaint also alleged that the parents had issues with homelessness, substance abuse, and domestic violence.

{¶6} Father's second attorney withdrew on October 25, 2017, due to father's failure to appear. K.H. was subsequently adjudicated neglected and dependent. Father filed a pro see motion to dismiss the proceedings and a petition for custody of both children.

{¶7} Father appeared without counsel at the disposition hearing for K.H. on February 23, 2018. He objected to the proceedings as "the violation of [his] natural human rights, liberties, and the pursuit of happiness." Subsequently, the attorney for the children's guardian ad litem ("GAL") asked, "Was Father asking for counsel or is he just representing himself * * * ?" The magistrate asked father if he wanted to be represented by an attorney. Father replied, "I would like to also answer that question by stating, Your Honor, I am not part of this Court society; therefore, I'm not obligated to answer any questions at the present time." The magistrate then stated that "I'll take that as a waiver of the right to counsel." Later in the hearing, father had to be removed due to his disruptive behaviors.

{¶8} The disposition was continued in progress until May 3, 2018. The magistrate's entry informed father how to obtain an attorney for the remainder of the proceedings. Before the next scheduled court date, father filed additional motions pro se and affidavits in support of his motions.

{¶9} The case was transferred to a new magistrate prior to the scheduled hearing. At the May 3, 2018 hearing, the new magistrate stated, "I'm going to start afresh, because I need to hear the beginning of the trial and not have to recreate it." Father was removed from the hearing immediately after it began due to his disruptive behavior. Subsequently, counsel for the children's GAL pointed out that maybe father needed a GAL because "he keeps appearing and saying that he doesn't understand things on the record."

{¶10} The magistrate asked mother if father had a history of mental-health issues and mother replied, "I don't know. I don't think so." The caseworker stated that the main issues had been "substance abuse and a history of DV and homelessness, both parties." After some back and forth among the participants at the hearing, the magistrate stated that "[h]is mental capacity does not seem to be compromised." Counsel for the children's GAL stated, "I was just basing it on his statement. Anyone can be confused about the legalities." The magistrate stated that she would think about the issue.

{¶11} The magistrate determined that because father had failed to appear during prior proceedings, father had not waived time. Therefore, the complaint regarding K.H. was dismissed, and HCJFS filed a new complaint and motion for interim custody.

{¶12} After a recess, the magistrate appointed a GAL for father. Father was allowed to return to the court room, but had to be removed multiple times for disruptive behavior. Father repeatedly claimed that he did not understand and that the court was speaking to him in a foreign language. The magistrate told him that "you need to get somebody to help you understand." Father replied, "No, I don't need legal advice." The magistrate informed him that a GAL had been appointed for him to help him through the proceedings. Father stated, "Nobody's been appointed to me. There's nothing appointed. I don't understand any of that." The magistrate subsequently found him in contempt. K.H. was again placed in the interim custody of HCJFS.

{¶13} The adjudicatory hearing for K.H. began on June 13, 2018. Father entered the courtroom and presented himself as a "living person" and stated that he did not "wish to contract with this Court in any way, shape or form." He added that it was "physically impossible for any person to stand in place of another." Therefore,

4

he had "no choice" but to "terminate the services" of his GAL, the children's GAL, and the attorneys representing the children.

{¶14} After some back and forth between father and the magistrate, father's GAL stated, "I think it's in his best interest to have an attorney appointed. I suggested that to him. I would ask the Court to give him his rights regarding an attorney also before this hearing starts." The magistrate noted that he had previously waived his right to counsel, but stated that if he wanted an attorney to represent him, the magistrate would "provide [him] that assistance." The magistrate then specifically asked him if he wanted an attorney. Father replied, "I don't want an attorney because I know it takes away all of my natural God-given rights."

{¶15} Father then participated in the hearing and asked questions of the witnesses. When father asked what an "adjudication" was, the magistrate stated that "[w]e have appointed a guardian to help you understand the proceedings." Father replied, "I am not looking for legal advice, I'm just looking for legal intent." He went on to state, "And once again, there's nobody that is representing me. I'm a living being and as far as any type of representation or anybody standing in my place, that's null and void and terminated at the present time." Father did state, however, that he would be willing to take advice from his GAL.

{¶16} Several more adjudicatory hearings for K.H. were held. Father participated in the proceedings. He questioned witnesses and objected to testimony. He would sometimes become overwhelmed or upset, but he left the courtroom to compose himself rather than become disruptive. He also filed additional motions and subpoenaed witnesses. K.H. was adjudicated neglected and dependent on October 17, 2018.

{¶17} The disposition hearing for K.H. and the permanent-custody hearing for D.H. began on October 22, 2018. Father again represented himself. He became

frustrated when he was not allowed to "inform [mother] about the law" or coach her as a witness, so he made an oral motion to sever and a motion for a continuance, both of which the magistrate denied.

{¶18} At a hearing on November 1, 2018, mother's counsel told the magistrate that father had had been attempting to intimidate her before coming to court and had tried to influence her testimony. She had told counsel that she was afraid to testify and requested that father not be present during her testimony. The magistrate arranged for father to see and hear her testimony from another room, accompanied by his GAL. At a later hearing, mother said that she was no longer afraid of father, and he was allowed to remain in the room while she testified.

{¶19} At a hearing on December 5, 2018, father's GAL indicated that he had had numerous conversations with father about obtaining counsel. The GAL stated, "He today told me that he wants counsel to represent him in the permanent custody case before Your Honor, and I think it's in his best interest." Counsel for the other parties agreed that father had a right to counsel, but argued that father had repeatedly said that he did not want counsel and that he was just trying to delay the proceedings. The magistrate asked father if he was requesting an attorney to represent him. Father replied, "I currently am, yes." The magistrate agreed to appoint counsel and warned father that he would have to cooperate with his attorney. The magistrate also gave father's counsel additional time to prepare.

{¶20} The permanent-custody hearings continued with father represented by counsel. On April 29, 2019, the magistrate recommended that permanent custody of both children be granted to HCJFS. Father, through counsel, filed objections to the magistrate's decision. The juvenile court overruled father's objections and adopted the magistrate's decision. This appeal followed.

{¶21} Father argues his two assignments of error together. In his first assignment of error, father contends that he was denied his right to counsel throughout the majority of the juvenile court proceedings. In his second assignment of error, he contends that the juvenile court failed to sufficiently inquire whether he had knowingly, voluntarily and intelligently waived his right to counsel and whether he was competent to waive his right to counsel. These assignments of error are not well taken.

{¶22} We first note that although father filed objections to the magistrate's decision, he did not specifically raise these issues in his objections. Therefore, we can reverse only upon a finding of plain error. Juv.R. 40(D)(3)(b); *Saqr v. Naji*, 1st Dist. Hamilton No. C-160850, 2017-Ohio-8142, ¶ 15; *In re W.W.*, 1st Dist. Hamilton Nos. C-110363 and C-110402, 2011-Ohio-4912, ¶ 37.

## II. Waiver of Right to Counsel

{¶23} Parental termination cases have been likened to the family-law equivalent of the death penalty in a criminal case. *In re R.K.*, 152 Ohio St.3d 316, 2018-Ohio-23, 95 N.E.2d 394, ¶ 1; *In re M. Children*, 1st Dist. Hamilton No. C-180564, 2019-Ohio-484, ¶ 13. "Hence, it is critical that the rights of a parent who faces the permanent termination of parental rights are appropriately protected." *In re R.K.* at ¶ 1. Included in those rights is the right to counsel at all stages of the proceedings, as provided for in R.C. 2151.352 and Juv.R. 4. *Id.*; *In re W.W.E.*, 2016-Ohio-4552, 67 N.E.3d 159, ¶ 25-26 (1oth Dist.).

{¶24} Nevertheless, there are differences between criminal cases in which "the litigant may lose his physical liberty if he loses the litigation" and cases involving the termination of parental rights. *In re W.W.E.* at ¶ 38, quoting *Lassiter v. Dept. of Social Servs.*, 452 U.S. 18, 25, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). A parent can

waive the right to counsel in a parental termination action. *In re R.K.* at ¶ 5; *In re M. Children* at ¶ 15. Waiver is the "intentional relinquishment or abandonment of a known right." *In re R.K.* at ¶ 5, quoting *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2822, 74 N.E.3d 464, ¶ 20. In determining whether a parent has waived the right to counsel, courts have considered whether the waiver was knowingly, voluntarily, and intelligently made. *In re M. Children* at ¶ 15; *In re W.W.E.* at ¶ 36.

{¶25} Courts have also held that a parent's waiver of the right to counsel in a parental termination proceeding may be inferred where "the total circumstances of the individual case, including the background, experience and conduct of the parent" indicate that the parent has waived the right to counsel. *In re M. Children*, 1st Dist. Hamilton No. C-180564, 2019-Ohio-484, at ¶ 15; *In re W.W.E.*, 2016-Ohio-4552, 67 N.E.3d 159, at ¶ 39; *In re A.S.*, 8th Dist. Cuyahoga Nos. 94098 and 94104, 2010-Ohio-1441, ¶ 27; *In re Rachal G.*, 6th Dist. Lucas No. L-02-1306, 2003-Ohio-1041, ¶ 14. Inferred waivers have been found in circumstances where a parent has repeatedly failed to communicate with counsel or attend scheduled hearings. *See In re M. Children* at ¶ 15; *In re A.S.* at ¶ 30.

### A. February 23, 2018 Hearing

{¶26} First, father contends that the trial court erred in denying him the right to counsel at the hearing on February 23, 2018. At that time, father's counsel had been allowed to withdraw because father had failed to appear at numerous hearings and to communicate with counsel. When the magistrate at the hearing asked father if he wanted counsel, father refused to answer, and the magistrate stated that he had waived the right to counsel. Father was subsequently removed from the courtroom due to his disruptive behavior.

8

{¶27} The record shows that prior to that hearing, father had been informed numerous times both orally and in writing that he had the right to counsel. The magistrate appointed counsel for him twice, and both attorneys were permitted to withdraw due to father's lack of cooperation. While it would have been better for the magistrate to conduct a more thorough inquiry into father's decision, we can infer under the totality of the circumstances that father waived the right to counsel. *See In re A.S.* at ¶ 26-31; *In re Z.Y.*, 8th Dist. Cuyahoga No. 86293, 2006-Ohio-300, ¶ 28-32; *In re Moore*, 153 Ohio App.3d 641, 2003-Ohio-4250, 795 N.E.2d 149, ¶ 18-21 (3d Dist.); *In re Rachal G.* at ¶ 13-17.

{¶28} Father points out that after the magistrate found that he had waived his right to counsel, he had stated, "There was no waiver of right in this courtroom, absolutely not." But father takes this statement out of context. Father followed that statement by saying, "I'm a natural breathing living entity," and then he proceeded to ask the magistrate for a moment to "prepare his proper paperwork." In fact, in every hearing, father stated that he was a "natural breathing living entity" who was not waiving any of his rights and that he had never agreed to "contract" with the court. Thus, father's statement suggests that he was referring to his rights as a natural human being, not his right to counsel. Consequently, the juvenile court did not err in finding that father had waived his right to counsel at the February 23, 2018 hearing.

### B. May 3, 2018 Hearing – Competency/Guardian Ad Litem

{¶29} Next, father contends that the magistrate erred in denying him representation at the hearing on May 3, 2018. He argues that although the court appointed him a GAL, it did not appoint counsel, it did not engage in a colloquy to determine if he validly waived his right to counsel, and it did not consider whether he was competent to waive counsel and represent himself.

**{¶30}** At that hearing, father repeatedly stated that he did not want counsel to represent him even though he claimed that he did not understand the proceedings, and the magistrate told him he needed "someone to help him understand." Father also objected to the appointment of the GAL. The record shows that at that time, father was not going to accept the appointment of counsel under any circumstances, and he expressly waived his right to counsel. Further, at that time, the new magistrate stated that she would "start afresh," and father did not suffer any prejudice due to his lack of counsel prior to that time.

**{¶31}** We find no merit in father's claim that the trial court should have inquired into his competency at that time. R.C. 2151.281(C) states that "[i]n any proceeding concerning an alleged or adjudicated * * * abused, neglected, or dependent child in which the parent appears to be mentally incompetent * * *, the court shall appoint a guardian ad litem to protect the interest of that parent." We review the court's decision to appoint a guardian ad litem under an abuse-of-discretion standard. *In re W.W.E.*, 2016-Ohio-4552, 67 N.E.3d 159, at ¶ 46; *In re K.R.*, 11th Dist. Trumbull No. 2015-T-0008, 2015-Ohio-2819, ¶ 27.

**{¶32}** Neither the juvenile statutes nor the juvenile rules provide a definition of the term "incompetent." *In re D.C.H.*, 9th Dist. Summit No. 22648, 2005-Ohio-4257, ¶ 8. In the context of criminal proceedings, R.C. 2945.37(G) provides that a defendant is incompetent to stand trial if the court finds by a preponderance of the evidence that "because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense[.]" A defendant is presumed competent to stand trial, and the burden is on the defendant to prove by a preponderance of the evidence that he or she is not competent. *State v. Jordan*, 101 Ohio St.3d 216, 2004-Ohio-783, 804 N.E.2d 1, ¶ 28.

{¶33} Incompetency must not be equated with mere mental or emotional instability or even with outright insanity. A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel. *State v. Vrabel*, 99 Ohio St.3d 184, 2003-Ohio-3193, 790 N.E.2d 303, ¶ 29. *See In re Amber G.*, 6th Dist. Lucas No. L-04-1091, 2004-Ohio-5665, ¶ 19. A lack of cooperation with counsel is not sufficient indicia of incompetence to raise doubt about a defendant's competence to stand trial. *Vrabel* at ¶ 30. Further, the endorsement of a "sovereign-citizen" type of belief system alone does not mean that a defendant is incompetent. *State v. Thomas*, 1st Dist. Hamilton No. C-170400, 2019-Ohio-132, ¶ 15-25.

{¶34} Nothing in the record shows that father was incapable of understanding the proceedings. To the contrary, when the magistrate explained the order of the proceedings on several occasions, father's responses indicated that he understood. The appointment of a GAL for father was done in an abundance of caution because father kept saying that he did not understand. While R.C. 2151.281 requires the appointment of a GAL if a parent appears to be incompetent, nothing in the statute prevents a GAL from being appointed for another reason.

{¶35} In context, father's claims that he did not understand seemed to be a strategy or a claim that he did not understand why temporary custody of his children had been granted to HCJFS, not a claim that he did not understand the proceedings. The record shows that father's GAL acted more as standby counsel than in a capacity as GAL, and, despite father's claims that he did not want legal advice, he consulted with and listened to the GAL.

{¶36} This case is distinguishable from *In re M. Children*, 1st Dist. Hamilton No. C-180564, 2018-Ohio-484, in which this court reversed a juvenile court decision

11

granting permanent custody of a mother's child to HCJFS because the magistrate failed to engage in a sufficient colloquy to determine if mother was competent to waive the right to counsel and whether she had knowingly, intelligently, and voluntarily waived that right under the "unique facts" of that case. *Id.* at ¶ 3 and 25. We stated,

> By appointing a guardian ad litem to protect mother's interests, the magistrate necessarily determined that mother appeared to be mentally incompetent. But he then allowed this seemingly incompetent person "to fire" her attorney, allowed counsel for the mentally incompetent mother to withdraw, and required mother to proceed pro se.

*Id.* at ¶ 20.

{¶37} But in that case, mother's counsel had asked the court to appoint a GAL for mother because mother "had been unable to assist" counsel in preparing a defense and had asked counsel "to engage in actions [counsel] deemed unethical and frivolous." *Id.* at ¶ 8. Further, the court required mother to represent herself at the permanent custody hearing even though mother had retained counsel.

{¶38} In this case, father expressly stated numerous times that he did not want counsel, and the record contains nothing to rebut the presumption that father was competent. Therefore, the magistrate did not err in failing to inquire into his competency, even though it had appointed him a GAL. *See In re W.W.E.*, 2016-Ohio-4552, 67 N.E.3d 159, at ¶ 46; *In re D.C.H.*, 9th Dist. Summit No. 22648, 2005-Ohio-4257, at ¶ 8-15. Further, the magistrate's decision to appoint a GAL to help father in representing himself was not so arbitrary, unreasonable or unconscionable as to connote an abuse of discretion. *See Blakemore v. Blakemore*, 5 Ohio St.3d 217,

218, 450 N.E.2d 1140 (1983); *In re Patterson*, 1st Dist. Hamilton No. C-090311, 2010-Ohio-766, ¶ 20.

{**¶39**} Father argues that because he was removed from the courtroom and did not have counsel, he was left unrepresented during the hearing. In the criminal context, this court has stated that the accused, by persisting in disruptive conduct, lost his constitutional right to be present at the trial, and that his removal from the courtroom and the continuance of the trial in his absence were not unconstitutional. *See State v. Phillips*, 34 Ohio App.2d 217, 218-219, 299 N.E.2d 286 (1st Dist.1972), citing *Illinois v. Allen*, 397 U.S. 337, 91 S.Ct. 1057, 25 L.Ed.2d 353 (1970).

{**¶40**} We have also held that when a defendant elects to represent himself, and that defendant's conduct, following a warning to desist, is so disruptive that it threatens the integrity and efficacy of the trial, he has forfeited his right to self representation. The trial court may remove the defendant from the proceedings and allow standby counsel to represent the defendant. *State v. Mizell*, 1st Dist. Hamilton Nos. C-070750 and C-070751, 2008-Ohio-4907, ¶ 31.

{**¶41**} The trial court has broad discretion to control the proceedings before it. *State ex rel. Butler v. Dennis*, 66 Ohio St.2d 123, 128, 420 N.E.2d 116 (1981); *State v. Brewster*, 1st Dist. Hamilton Nos. C-030024 and C-030025, 2004-Ohio-2993, ¶ 70. Father was absent due to his own behavior. "[N]either in civil nor in criminal cases will the law allow a person to take advantage of his own wrong." *Phillips* at 220. The magistrate acted within her discretion in removing father for his disruptive behavior. His guardian ad litem, acting as standby counsel, was present for the proceedings.

### C. June 13, 2018 Hearing

{¶42} Father next argues that the magistrate erred in denying him the right to counsel at the June 13, 2018 hearing. At that hearing, father's GAL stated it would be in his best interest to be represented by counsel. The magistrate asked father if he wanted an attorney. Though he had expressed that he was "terrified of the Court," father explicitly stated several times that he did not want an attorney or legal advice. Therefore, he expressly waived his right to counsel at that hearing.

### D. Permanent-Custody Hearings

{¶43} Finally, father argues that he was denied the right to counsel at the commencement of the permanent-custody trial on October 22, 2018, and the following hearings. Father actively represented himself at the October 22, 2018 hearing. He questioned witnesses, requested subpoenas, made oral motions, and objected to testimony. He informed the magistrate of the amount of preparation he had done to represent himself. He stated, "I have focused for six months on preparing a case * * *," and "I don't have time to do anything in my life except work nonstop on this case."

{¶44} During the November 1, 2018 hearing, father continued to actively represent himself. He made further comments reaffirming his decision to represent himself. He stated, "I represent myself, stand here as myself." Referring to his GAL, he stated that "I'm a living person. And I've terminated all appointees that are * * * trying to stand in my place."

{¶45} When father finally requested counsel, the magistrate appointed counsel over the objections of the other parties and allowed counsel time to prepare. Father was represented by counsel through the remainder of the proceedings. Consequently, the juvenile court did not deny father his right to counsel during the permanent-custody hearings.

### *III. Summary*

{¶46}  In sum, father was told numerous times of his right to counsel and that it was in his best interest to have counsel.  Father expressly waived his right to counsel numerous times.  Under the totality of the circumstances, we hold that father, who was competent, validly waived his right to counsel up until he formally requested counsel at the December 5, 2018 hearing.  We find no error by the trial court in permitting father to represent himself, much less plain error.  Therefore, we overrule father's two assignments of error, and affirm the trial court's judgment granting permanent custody of D.H. and K.H. to HCJFS.

Judgment affirmed.

**BERGERON** and **WINKLER, JJ.,** concur.

Please note:
The court has recorded its own entry this date.