[Cite as *In re C Children*, 2023-Ohio-588.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

IN RE: C CHILDREN
:  APPEAL NO. C-220532
  TRIAL NO. F13-1783Z

:

:  *O P I N I O N.*

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: March 1, 2023

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Michelle Browning*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Roberta J. Barbanel*, for Appellee Mother,

*Victoria Link*, for Guardian Ad Litem for the minor children,

*Jeffrey J. Cutcher*, for Appellant Legal Custodian.

**BERGERON, Judge.**

{¶1} This case involves the right to counsel for a participant in a parental termination of custody proceeding. When appellant maternal grandmother ("Legal Custodian") arrived without a lawyer at the permanent custody hearing seeking custody of her grandchildren, the trial court took no measures to ensure that she was knowingly, intelligently, and voluntarily waiving her right to counsel. Based on the totality of the circumstances revealed by the record at hand, we cannot say that Legal Custodian intentionally or implicitly waived her right to counsel. Accordingly, we must reverse the trial court's judgment and remand this matter for a new trial so that she may be afforded her right to counsel.

I.

{¶2} The record in this case stretches back years. Legal Custodian initially received custody of her grandchildren in October 2014. Several years later, citing concern for the children, the Hamilton County Department of Job and Family Services ("HCJFS") obtained an emergency ex parte removal order in January 2020 to secure emergency custody of the children. The next day, the court appointed Erika Dority as counsel for Legal Custodian for the interim custody hearing. After HCJFS obtained interim custody, Ms. Dority filed a motion to withdraw as Legal Custodian's attorney, emphasizing that "[t]he client attorney relationship is irrecoverabl[y] broken." Shortly thereafter, the court appointed Michael Lanzillotta as counsel for Legal Custodian.

{¶3} Due to a failure to complete a dispositional hearing within the requisite time of the complaint filed by HCJFS, R.C. 2151.28(B)(3), in August 2020, HCJFS's initial complaint was dismissed without prejudice and subsequently refiled.

2

Thereafter, the court again granted interim custody to HCJFS. Later in October, the magistrate adjudged the children dependent at an adjudication and disposition hearing. Also at this hearing, the court learned that Legal Custodian no longer wished Mr. Lanzillotta to represent her. Although she indicated a plan to retain private counsel, the court referred Legal Custodian to the public defender's office for assistance in procuring an attorney.

{¶4} Legal Custodian subsequently failed to attend a hearing in October 2020 where temporary custody was granted to HCJFS. Legal Custodian attended an annual review hearing in December 2020, but without an attorney. In January 2021, however, the court appointed Celia Weingartner counsel for Legal Custodian. After further procedural wrangling, Legal Custodian instructed Ms. Weingartner to file a motion to withdraw as counsel. Ms. Weingartner did so in April 2021, on behalf of Legal Custodian, citing a "complete and total breakdown in the attorney-client relationship."

{¶5} Of the ensuing three hearings scheduled by the court (after withdrawal of Ms. Weingartner), Legal Custodian only attended one of them, and without counsel. The record does not disclose that the magistrate ever questioned her about whether she wanted a lawyer or whether she intended to proceed pro se.

{¶6} Finally, we arrive at the permanent custody hearing in April 2022. Legal Custodian arrived almost an hour late to the hearing, citing car trouble and claiming that she had tried to call the court to provide notice of her delay. But the hearing had already been delayed by 50 minutes in order to see if mother and father would attend, so her tardiness did not really delay the proceedings.

{**¶7**}   Although Legal Custodian did not arrive with an attorney, she did bring her (nonlawyer) friend, James Williams, who claimed to be her "power of attorney" and who was working on securing funds for Legal Custodian to retain counsel.  Based on the context of the hearing as it unfolded, it appears that Legal Custodian believed that Mr. Williams could, in effect, represent or at least assist her during the hearing. But each time he attempted to do so, the court (properly) refused, reminding them that Mr. Williams was not Legal Custodian's attorney and thus could not function effectively as counsel during the hearing.

{**¶8**}   Frustrated by an inability to assist during the proceeding, Mr. Williams indicated that he could secure the necessary funds to retain counsel for Legal Custodian, so that she could proceed at a separate hearing with counsel. The magistrate, however, declined this overture:

> We got set the whole day.  [Legal Custodian] was aware that we had this whole day set.  She should have had her attorney present for today's proceedings * * * [T]hese children have been held in limbo for so long.  We can't continue to continue these proceedings for that purpose * * * You had I think a couple of attorneys that you fired that were public defender[s], so you had ample opportunity to have representation.

{**¶9**}   When Legal Custodian struggled to conduct a cross-examination again, she requested that Mr. Williams speak on her behalf since he was her power of attorney. The court refused again, emphasizing that "she is representing herself." And after Legal Custodian requested that she return with a lawyer, the magistrate again refused: "[m]a'am, we are set to go to trial today.  You've had more than ample

4

opportunity to retain counsel to be present for today. That did not occur, so I'm not going to continue the matter for you to get an attorney in here and kick this out further."

**{¶10}** After further struggles during cross-examination, the following dialogue ensued:

The Court: We'll give leeway because [Legal Custodian] is clearly struggling.

Legal Custodian: I am very hard struggling because I am under the impression here that no matter what I say, it's just going to be, you know, viewed as – you know, I'm just not knowing what I am doing. Obviously, that's clear. That's a no-brainer. I just need to get to the point where the truth during all this comes, you know. I don't know how to ask questions. I'm not an attorney. I don't have an attorney present.

The Court: You have fired several attorneys, ma'am, and we set this knowing that we're going to present this case. You had an opportunity to be represented. You chose not to be.

Legal Custodian: That's not true.

The Court: Okay. The truth is that you had attorneys that were dismissed because you did not want them to represent you.

Legal Custodian: Because they did not do their job.

The Court: Well I'm going to do mine.

Legal Custodian: I know you are.

The Court: And my job is to let you ask questions.

Legal Custodian: Right.

The Court: On your own behalf.

{¶11} Later in the hearing, Mr. Williams asked the court if he could make a statement in support of Legal Custodian. The court informed the pair that Legal Custodian could choose to call Mr. Williams as a witness, but the court could not allow just anyone to stand up and make statements: "I understand that you're not a trained attorney and you don't know what you are doing, but we are going to try to work with you."

{¶12} Legal Custodian eventually asked to directly examine Mr. Williams. Mr. Williams attempted to read from a physical document that he prepared before the court requested for the document to be shown to all the other attorneys. In the ensuing argument where Mr. Williams requested to speak, the magistrate appreciated Legal Custodian's challenges:

> Mr. Williams: Objection. Why can't we speak now? It's our turn. Have
>
> the same respect that we showed everyone else.
>
> The Court: Because – do you know what the real problem is, sir? She
>
> [Legal Custodian] didn't go to law school.

{¶13} After the custody hearing, the magistrate granted permanent custody of the children to HCJFS in June 2022. Later, Legal Custodian secured a fourth attorney, James Costin, and he filed an objection to the decision to award permanent custody to HCJFS, citing the absence of any waiver of the right to counsel.

{¶14} In its denial of the objection, the trial court determined that, based on the totality of the circumstances, Legal Custodian had waived her right to counsel because: (1) she had fired three previous attorneys, (2) missed multiple hearings leading to the permanent custody trial, (3) arrived late to the permanent custody trial,

and (4) did not ask for a continuance or for counsel until the middle of cross-examination of a witness. Legal Custodian appeals with a single assignment of error, maintaining that the trial court erred by failing to conduct any inquiry regarding her desire to proceed without counsel.[1]

## II.

{¶15} "Parental termination cases have been likened to the family-law equivalent of the death penalty in a criminal case." *In re M Children*, 1st Dist. Hamilton No. C-180564, 2019-Ohio-484, ¶ 13, citing *In re R.K.*, 152 Ohio St.3d 316, 2018-Ohio-23, 95 N.E.3d 394, ¶ 1. "Hence, it is critical that the rights of a parent [or guardian] who faces the permanent termination of parental rights are appropriately protected." *In re R.K.* at ¶ 1. To that end, R.C. 2151.352, titled "Right to counsel" provides "[a] child, the child's parents or custodian, or any other person in loco parentis of the child is entitled to representation by legal counsel at all stages of the proceedings under this chapter * * * If, as an indigent person, a party is unable to employ counsel, the party is entitled to have counsel provided for the person."

{¶16} But a parent's or custodian's right to counsel in a parental termination action can be waived. *In re M Children* at ¶ 15, citing *In re R.K* at ¶ 5; *In re W.W.E.*, 2016-Ohio-4552, 67 N.E.3d 159, ¶ 36 (10th Dist.). For example, a parent or custodian can expressly waive their right to counsel. "In determining whether a parent has waived the right to counsel, courts have considered whether the waiver was knowingly,

---

[1] Although the dissent frames the question as whether the trial court abused its discretion in denying a continuance, the trial court squarely held that a waiver of counsel occurred. Moreover, the appellant directly challenges the waiver of counsel conclusion, and that is all that appellees address in this appeal. In other words, no party advances the argument developed by the dissent.

intelligently, and voluntarily made." *In re M Children* at ¶ 15, citing *In re W.W.E.* at ¶ 36.

{¶17} In addition to an express waiver of counsel, a parent's or legal custodian's waiver of counsel may also be inferred "where 'the total circumstances of the individual case, including the background, experience and conduct of the parent' indicate that the parent has waived the right to counsel." *In re M Children* at ¶ 15, quoting *In re Rachal G.*, 6th Dist. Lucas No. L-02-1306, 2003-Ohio-1041, ¶ 14; *In re W.W.E.* at ¶ 39; *In re A.S.*, 8th Dist. Cuyahoga Nos. 94098 and 94104, 2010-Ohio-1441, ¶ 27. The Supreme Court has cautioned, however, that "[w]aiver of counsel cannot be inferred from the unexplained failure of the parent to appear at a hearing." *In re R.K.* at ¶ 9. In a totality of the circumstances review, we must consider all of the particular facts of the case to ascertain whether an inferred waiver of counsel occurred.

{¶18} We review whether an individual appropriately waived their right to counsel de novo. *See State v. Smallwood*, 6th Dist. Lucas No. L-19-1116, 2020-Ohio-5556, ¶ 9 ("Whether a defendant knowingly, intelligently, and voluntarily waived the right to counsel is an issue that we review de novo."); *State v. Lee*, 2d Dist. Montgomery No. 28125, 2020-Ohio-3987, ¶ 40 ("We conduct an independent review to determine whether a defendant voluntarily, knowingly, and intelligently waived his right to counsel based on the totality of the circumstances.").

{¶19} As we consider the application of these standards, we turn to our recent precedent in *In re M Children*, where we emphasized the need for the court to explore whether the parent was voluntarily relinquishing her right to counsel: "it was error for the [trial] court to find that mother had waived her right to counsel without engaging in an inquiry to determine whether mother was in fact competent to do so and whether

8

mother was knowingly, intelligently, and voluntarily waiving that right, even if by inference from her conduct." 1st Dist. Hamilton No. C-180564, 2019-Ohio-484, at ¶ 23.

{¶20} During the custody proceeding in *In re M Children*, mother engaged with three different court-appointed attorneys, firing or dismissing each of them before eventually hiring private counsel. *Id.* at ¶ 4-10. Mother missed a motion hearing during this time, *id.* at ¶ 5, and her final court-appointed attorney requested a continuance on two separate occasions, asking for a guardian ad litem ("GAL") to be appointed due to mother's inability to assist in a defense of her case. *Id.* at ¶ 7-8. While granting a final continuance and appointing a GAL, the trial court also informed the parties, "we're going forward the next time, and [mother's] rights are going to be protected by [her court appointed counsel] or new counsel or the Guardian, but we can't just sit on this case * * * [Y]ou're going to have to assist the folks in preparing a defense, absent your assistance, I have to proceed with the case * * * I can't just put this case on hold." *Id.* at ¶ 8.

{¶21} At the next hearing, appearing without her court-appointed attorney, mother explained that she had paid for private counsel who instructed her to request a continuance. *Id.* at ¶ 9. The court declined mother's request and proceeded with the hearing with mother representing herself. *Id.* at ¶ 10. Mother also represented herself in the permanent custody hearing where custody was granted to HCJFS. *Id.* at ¶ 10-11. The trial court summarized mother's history with counsel, concluding in part that, "[t]o grant the requested continuance would have delayed the matter more than two times what [O.R.C. 2151.414(A)(2)] permits. The court finds, by her actions, [mother] waived counsel." *Id.* at ¶ 18.

**{¶22}** This court reversed the trial court's holding given "the magistrate's failure to address mother's inferred waiver of counsel and her competency to proceed on her own behalf prior to beginning the permanent-custody trial, particularly because the court found that mother appeared to be incompetent and appointed a guardian ad litem." *In re M Children*, 1st Dist. Hamilton No. C-180564, 2019-Ohio-484, at ¶ 19. And because mother declared that she was hiring a new attorney further "diminishes a finding that mother had knowingly, voluntarily, and intelligently waived the right to counsel." *Id.* at ¶ 22.

**{¶23}** The *In re M Children* analysis comports with the balance of Ohio authority: "when reviewing a waiver of the right to counsel in the context of a permanent termination of parental rights, courts in Ohio have examined whether the waiver was knowingly, intelligently, and voluntarily made." *In re W.W.E.*, 2016-Ohio-4552, 67 N.E.3d 159, at ¶ 36. "Courts have also inferred a waiver of the right to counsel in a parental termination proceeding where the 'the total circumstances of the individual case, including the background, experience and conduct of the parent' indicate that the parent has waived the right to counsel." *Id.* at ¶ 39, quoting *In re G.S.*, 10th Dist. Franklin Nos. 10AP-734, 10AP-736, 10AP-737 and 10AP-738, 2011-Ohio-2487, ¶ 7. Applying the "totality of the circumstances" standard, the Tenth District determined that the trial court had sufficiently explained to the father the perils of him proceeding pro se after he requested to release his attorney, thus rendering father's waiver of counsel knowing, intelligent, and voluntary. *In re W.W.E.* at ¶ 47. "[T]he record reflects that [father] was voluntarily exercising his right to discharge his appointed counsel as demonstrated by [father's] repeated affirmative

answers when asked whether it was his intention to proceed without representation." *Id.*

**{¶24}** Here, we see no indication, based on the totality of the circumstances, that Legal Custodian knowingly, voluntarily, and intelligently waived her right to counsel. On appeal, the GAL and HCJFS defend the trial court's determination by insisting that Legal Custodian fired three attorneys, missed multiple and significant hearings leading up to the permanent custody trial, arrived late to the permanent custody trial, failed to request a continuance or for counsel until the middle of cross-examination of a witness, and knew how to obtain counsel through the public defender's office—as she had done before in the custody proceeding three times.

**{¶25}** We, however, view the record differently. First of all, the fact that Legal Custodian arrived late to the hearing does not impact the calculus because the hearing had already been delayed for independent reasons. Moreover, her missing two hearings since the termination of her last lawyer certainly raises concerns, but this does not weigh heavily in the direction of an implied waiver of counsel given the guidance we have received from the Supreme Court. *See In re R.K.* 152 Ohio St.3d 316, 2018-Ohio-23, 95 N.E.3d 394, at ¶ 9 ("Waiver of counsel cannot be inferred from the unexplained failure of the parent to appear at a hearing."); *see also In re M Children*, 1st Dist. Hamilton No. C-180564, 2019-Ohio-484, at ¶ 5 (where mother also failed to appear at a motion hearing).

**{¶26}** The operative facts that convince us, based on a totality of the circumstances, that no waiver occurred include the following: (1) the magistrate never endeavored to determine whether Legal Custodian knowingly, intelligently, and voluntarily waived the right to counsel, *see In re M Children* at ¶ 19; (2) the

magistrate did not ask her whether she intended to proceed without counsel at any point, nor did they ever explain the risks of proceeding pro se; (3) she previously had counsel and never indicated that she wished to proceed pro se, *see id.* at ¶ 22; (4) she indicated that she desired counsel at the permanent custody hearing, which "diminishes a finding that [Legal Custodian] had knowingly, voluntarily, and intelligently waived the right to counsel," *see id.*; (5) she believed (mistakenly) that Mr. Williams could assist her in some type of representative capacity (in other words, she knew she lacked the ability to conduct the hearing by herself); (6) she did not have requisite sophistication or understanding of legal procedures to adequately represent herself, as exhibited in her efforts to participate in the permanent custody hearing; and (7) she obtained a lawyer immediately after the permanent custody hearing who filed objections on her behalf.

{¶27} Finally, although Legal Custodian did fire three attorneys, a similar situation arose in *In re M Children. See id.* at ¶ 4, 5, 9. Certainly, it can be probative of a desire to proceed pro se if a party refuses to hire counsel, particularly if the court has admonished the party about the risks of proceeding without counsel. On this record, however, it seemed that Legal Custodian was not happy with the results of counsel, rather than reflecting any desire to proceed pro se. That view is bolstered by her request for counsel at the permanent custody hearing, and by the retention of counsel to file her objections.

{¶28} That does not mean, of course, that parties are entitled to an unlimited supply of counsel in such a manner that will derail the litigation at hand. We understand that courts must be able to manage their dockets and may not be in a position to indulge delays when a party does not act in a diligent fashion. However,

the right to counsel is guaranteed by statute here, *see* R.C. 2151.352, and courts must at least take modest measures, such as ensuring that an unrepresented parent or custodian is proceeding attentively, before it can be said that their conduct amounts to a waiver of counsel. Here, while the magistrate was aware that Legal Custodian arrived without counsel and was not completely capable of defending her case, the court then failed to "address [Legal Custodian's] inferred waiver of counsel and her competency to proceed on her own behalf," *see In re M Children*, 1st Dist. Hamilton No. C-180564, 2019-Ohio-484, at ¶ 19, and allowed the hearing to proceed forward regardless.

{¶29} In this vein, *In re W.W.E.* is instructive on what may be a suitable course of action in this circumstance. In *W.W.E.*, the trial court effectively communicated to father the full weight of his decision to proceed pro se *before* the commencement of the permanent custody trial. *In re W.W.E.*, 2016-Ohio-4552, 67 N.E.3d 159, at ¶ 47. Father received sufficient notice of why he would be disadvantaged (given his lack of a legal education), what legal counsel would be able to provide him, and that father's decision to proceed without legal counsel could not be recanted. *Id.* The court could also raise these matters with an unrepresented party well in advance of the permanent custody hearing where, as here, there was potential reason to believe that an individual might be proceeding pro se.

\* \* \*

{¶30} Based on a thorough review of the record, we conclude that Legal Custodian did not waive counsel nor can we infer waiver of counsel based on the totality of the circumstances. Thus, we sustain Legal Custodian's assignment of error, reverse the trial court's judgment granting permanent custody of the children to

HCJFS, and remand this cause for a new trial at which Legal Custodian is afforded the right to counsel.

Judgment reversed and cause remanded.

**ZAYAS, P.J.,** concurs.
**WINKLER, J.**, dissents.

**WINKLER, J.**, dissenting.

{¶31} In this permanent-custody case, the majority's decision to reverse the juvenile court's judgment and order a new trial so that the legal custodian, maternal grandmother ("grandmother"), can obtain private counsel ignores the juvenile court's authority to exercise its discretion under R.C. 2151.352 to deny a party a continuance for purposes of obtaining counsel. The record shows that grandmother obtained and fired three, separate appointed attorneys. Subsequently, grandmother failed to appear before the court at the next three hearings, including failing to attend the final pretrial hearing. Three months later, grandmother arrived late while the trial was already in progress and requested a continuance to obtain private counsel. Because the juvenile court did not abuse its discretion in denying grandmother's request for a continuance to obtain counsel, I dissent.

### Case Background

{¶32} Grandmother received legal custody of A.C.1 and A.C.2 in 2014. The Hamilton County Department of Job and Family Services ("HCJFS") moved for interim, temporary custody of A.C.1 and A.C.2 in January 2020 after grandmother had been evicted from her home and lacked stable housing. As a result of grandmother's instability, the juvenile court found A.C.1 and A.C.2 dependent. HCJFS's case-plan services required grandmother to complete random drug screens. Grandmother

14

completed three drug screens, which were positive for methamphetamines. Grandmother also continued to struggle with housing. Neither biological parent complied with the case-plan services, and the record reflects that both parents have issues with substance abuse and obtaining stable housing.

{¶33} Grandmother had three, separate appointed attorneys represent her prior to trial on HCJFS's permanent-custody motion. Grandmother's first counsel withdrew at grandmother's request in January 2020. Grandmother's second counsel withdrew in October 2020, also at grandmother's request, after the juvenile court adjudicated the children dependent. The magistrate referred grandmother to the public defender's office, but grandmother stated that she wanted to hire private counsel. In February 2021, grandmother obtained her third appointed counsel. Grandmother's third counsel withdrew in July 2021, again, at grandmother's behest.

{¶34} Grandmother failed to appear at the next court hearing in August 2021 on HCJFS's motion to extend temporary custody. According to the magistrate's entry, grandmother had not been complying with case-plan services. HCJFS filed a motion to modify temporary custody to permanent custody. At a hearing in December 2021, the record indicates that grandmother did not appear before the court, but she remained in the waiting room of the courthouse. In January 2022, the trial court held a final pretrial hearing on HCJFS's motion to modify temporary custody to permanent custody, and grandmother did not appear. The magistrate ordered that all parties be prepared to move forward at the scheduled trial date.

{¶35} In April 2022, the magistrate held the permanent-custody trial. Grandmother appeared one hour after the scheduled trial time and without an attorney. During the cross-examination of an HCJFS caseworker, grandmother

15

requested a continuance to hire private counsel, which the magistrate denied. The magistrate proceeded to find that permanent custody to HCJFS was in the best interest of the children. Grandmother filed objections, arguing in part that the magistrate denied grandmother's request for a continuance and required her to proceed in the permanent-custody trial without counsel. The juvenile court overruled grandmother's objections and adopted the magistrate's decision.

**{¶36}** Grandmother appeals from the juvenile court's judgment granting permanent custody of the children to HCJFS by arguing, in a sole assignment of error, that "the trial court erred by failing to conduct any inquiry regarding the legal custodian's desire to proceed without counsel."

### *R.C. 2151.352*

**{¶37}** The right to counsel in a juvenile-court proceeding is established in R.C. 2151.352. R.C. 2151.352 not only establishes the right to counsel for parties in a juvenile-court proceeding, but it also establishes the power of the juvenile court to consider, in its discretion, whether to continue a matter for a party to obtain counsel. R.C. 2151.352 provides:

> A child, the child's parents or custodian, or any other person in loco parentis of the child is entitled to representation by legal counsel at all stages of the proceedings under this chapter or Chapter 2152. of the Revised Code. If, as an indigent person, a party is unable to employ counsel, the party is entitled to have counsel provided for the person * * *. If a party appears without counsel, the court shall ascertain whether the party knows of the party's right to counsel and of the party's right to be provided with counsel if the party is an indigent person. **The court**

16

**may continue the case to enable a party to obtain counsel**, to

be represented by the county public defender or the joint county public

defender, or to be appointed counsel upon request pursuant to Chapter

120. of the Revised Code.

(Emphasis added.)

**{¶38}** Grandmother's assignment of error presupposes that a juvenile court must conduct a colloquy with a party to obtain a "waiver" of counsel prior to allowing that party to participate in proceedings pro se. By its plain language, R.C. 2151.352 permits a juvenile court, in its discretion, to conduct proceedings with a pro se party, and nothing in R.C. 2151.352 or the law requires the juvenile court to obtain a "waiver" of counsel from a pro se party in every instance prior to a court proceeding. Instead, the real issue in this appeal is whether the juvenile court erred when it denied grandmother's request for a continuance of the permanent-custody trial, so that grandmother could obtain private counsel. This court reviews the denial of a continuance under an abuse-of-discretion standard. *In re M.S.*, 1st Dist. Hamilton Nos. C-220105 and C-220119, 2023-Ohio-431, ¶ 33.

**{¶39}** The record shows that grandmother obtained and fired three, separate public defenders. Grandmother then failed to appear before the court at two subsequent hearings. In November 2021, grandmother failed to attend the final pretrial hearing, and the magistrate warned the parties in its entry that the parties should be prepared to go forward with the scheduled trial. Meanwhile, grandmother also failed to comply with case-plan services, including failing three of her drug screenings. The day of trial, three months after the final pretrial hearing, grandmother arrived an hour after the scheduled start time. During cross-examination of HCJFS's

17

witness, grandmother requested a continuance to hire private counsel. In sum, given grandmother's failure to abide by the case-plan services, her spotty attendance throughout the proceedings, and her firing of three, separate attorneys, the juvenile court did not abuse its discretion in denying grandmother's day-of-trial request for a continuance to obtain private counsel.

{¶40} The majority overlooks the authority of the juvenile court to consider, in its discretion, whether to grant a continuance under R.C. 2151.352. In doing so, the majority focuses exclusively on whether grandmother "waived" her right to counsel, but this issue is a red herring based on grandmother's erroneous view of the law that R.C. 2151.352 requires a juvenile court, in all cases, to conduct a colloquy with a party prior to permitting that party to proceed pro se. Obviously, grandmother did not waive her right to counsel at trial because grandmother expressly requested a continuance to obtain counsel. Again, the issue is whether grandmother was entitled to a continuance of the permanent-custody trial to obtain private counsel under these circumstances. She was not.

{¶41} The majority reasons that the magistrate should have conducted a colloquy with grandmother at some point prior to trial so that grandmother could appreciate the ramifications of proceeding pro se at the permanent-custody trial. The majority's reasoning is problematic, first, because the record does not contain transcripts of any of the hearings prior to trial, and therefore, this court has no basis to assume that the magistrate never warned grandmother about proceeding pro se. Second, the majority's decision fails to articulate when exactly a colloquy between the magistrate and grandmother should have taken place in this case. After grandmother fired her third attorney, grandmother failed to appear before the court at the next three

18

hearings, including failing to attend the final pretrial hearing. Simply put, on this record, the juvenile court had no notice of grandmother's intent or lack thereof to proceed pro se, nor could the juvenile court even predict whether grandmother intended to participate in the permanent-custody proceedings at all. It makes little sense that the magistrate would have conducted a colloquy with grandmother regarding the dangers of proceeding pro se during the permanent-custody trial when grandmother arrived late and objected to proceeding pro se by requesting a continuance to hire private counsel.

{¶42} Finally, by reasoning that the juvenile court should have conducted a colloquy with grandmother prior to trial, the majority appears to elevate grandmother's right to counsel to that of a juvenile in a delinquency case, where the juvenile faces a loss of liberty, and where the juvenile must be present for the court proceedings to move forward. *See* Juv.R. 3(B) ("If a child is facing the potential loss of liberty, the child shall be informed on the record of the child's right to counsel and the disadvantages of self-representation."); *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177 (articulating the obligations of a juvenile court in accepting a juvenile's waiver of counsel in a delinquency matter).

{¶43} In this case, the juvenile court was under no obligation pursuant to R.C. 2151.352 to continue the permanent-custody trial when grandmother showed up late on the day of trial and requested a continuance to obtain private counsel. The majority's decision renders as meaningless the authority of the juvenile court to consider, in its discretion, whether to grant a continuance under R.C. 2151.352. Therefore, because I believe that the majority's decision ignores the juvenile court's discretionary power under R.C. 2151.352 to deny a continuance, I respectfully dissent.

19

Please note:

The court has recorded its entry on the date of the release of this opinion.