[Cite as *In re L.Z.*, 2021-Ohio-1872.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

IN RE: L.Z.

:

:

:

APPEAL NO. C-210127
TRIAL NO.   F17-1650X

*O P I N I O N.*

Appeal From:  Hamilton County Juvenile Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  June 2, 2021

*Johnathan Sinclair*, for Appellant Mother,

*Scott Hoberg*, Gaurdian Ad Litem for Appellant Mother,

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Gretta M. Herberth*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Raymond T. Faller*, Hamilton County Public Defender, and *Emily Hughes*, Assistant Public Defender, for the Guardian Ad Litem.

**ZAYAS, Presiding Judge.**

{¶1} Appellant mother appeals the decision of the Hamilton County Juvenile Court granting permanent custody of her child to the Hamilton County Department of Job and Family Services ("HCJFS"). In a single assignment of error, mother contends that the trial court erred in awarding permanent custody to HCJFS. For the reasons discussed below, we find no merit in the assignment of error, and we affirm the judgment of the trial court.

### *Factual Background*

{¶2} L.Z. was born on October 22, 2019. Because mother had previously had her parental rights involuntarily terminated with respect to L.Z.'s five siblings in April and May of 2019, HCJFS filed a motion for interim custody, a motion for a determination that reasonable efforts were not required, and a complaint for permanent custody on October 25, 2019. That day, the parties stipulated to temporary custody to HCJFS, and on November 7, 2019, the magistrate granted the motion for a determination that reasonable efforts were not required, finding that the evidence established that HCJFS was previously awarded permanent custody of L.Z.'s older siblings.

{¶3} On July 30, 2020, HCJFS filed a motion to dismiss the complaint because the disposition hearing was not held within the 90-day time requirement, and refiled a motion for interim custody, a motion for a determination that reasonable efforts were not required, and a complaint for permanent custody. The following day, the magistrate granted the motions, noting that all of the parties agreed to interim custody to HCJFS.

2

{¶4} At the adjudication on October 1, 2020, the parties stipulated that mother was diagnosed with PTSD, unspecified depressive disorder, and unspecified anxiety disorder. She was previously ordered to complete counseling, community psychiatric supportive treatment, case management, parenting classes, a domestic-violence assessment and random toxicology screens. Mother failed to complete all court ordered case-plan services, and mother's parental rights were involuntarily terminated with respect to her five children in April and May of 2019. HCJFS also submitted a medical record from Good Samaritan Hospital from the birth of L.Z. that established that marijuana and cocaine were identified in the cord tissue at her birth.

{¶5} Based upon the stipulations and exhibits, L.Z. was adjudicated abused and dependent. None of the parties challenged the adjudication on appeal.

{¶6} The disposition was held on October 16, 2020. From the outset, mother requested the court to grant a temporary custody and first extension to give mother the opportunity to complete services. L.Z.'s guardian ad litem filed a report recommending that a grant of permanent custody was in the child's best interest.

{¶7} Abbey Turner, HCJFS caseworker, testified that she became involved in the case in November of 2019. She was the caseworker involved in L.Z.'s siblings, and testified about the agency's concerns with the other children, the parents' failure to complete the case plan, and her ongoing concerns regarding L.Z.'s safety with mother. Turner was aware that mother was in therapy with Greater Cincinnati Behavioral Health ("GCBH") and that mother had completed case management with GCBH, but mother had not yet successfully completed therapy.

{¶8} Turner was also concerned with substance abuse due to mother's history of cocaine and marijuana usage. Mother reported that she was not using any

drugs, but had not submitted any toxicology screens or attended any substance-abuse classes. Mother reported that she was unable to find an affordable service provider for the toxicology screenings. Mother also denied using cocaine during her pregnancy with L.Z. despite the fact that the medical records from the hospital established that the umbilical cord tissue tested positive for cocaine. Turner noted that mother provided financial assistance for the child by purchasing outfits and hair bows.

{¶9} Turner had historical concerns regarding father and domestic violence, and she wanted to ensure that mother understood how to recognize and prevent violence in the future. From 2017 to 2019, father exhibited a great deal of anger and aggression toward mother and the caseworkers, and mother never completed the domestic-violence-education program. Mother attempted to enroll in the STAR program at Women Helping Women but was unable to get into the program. Turner further testified that she had the same concerns about mother that she had in 2017, and that mother was not capable of providing a legally secure placement for L.Z.

{¶10} Turner could not locate any relatives, so L.Z. was living at the same foster home since her release from the hospital. This family had also adopted one of her biological siblings, and L.Z. would have a permanent home with the family. L.Z. is bonded with the family, and is a healthy, happy, child. L.Z. was recently diagnosed with a milk allergy.

{¶11} Sonja Brown, mother's visitation facilitator at the Family Nurturing Center from January 2020 to June 2020, testified on mother's behalf. She observed all of mother's visits. Brown testified that mother and L.Z. were bonded, mother met the child's needs, and interacted appropriately with L.Z.

**{¶12}** Mother testified that she had stable housing and submitted rent receipts from February 2020 to October 2020. Mother acknowledged that she did not finish the parent-coaching component of her parenting classes. She tried to enroll in the coaching, but was told that she could not enroll without a referral from HCJFS. Coaching was available, but cost $100 per class, and she could not afford it. Mother also acknowledged that she did not complete the domestic-violence-education course. She was scheduled to complete the class in February 2020, but the class was canceled due to COVID. Mother was currently in counseling and provided her therapy records.

**{¶13}** Mother discussed her visits with L.Z. Many of the visits were via video due to COVID. She missed a visit when her phone broke. Mother had missed a few in-person visits due to illness. Recently, Metro had eliminated numerous bus routes and changed pickup locations which caused her to miss a visit.

**{¶14}** Mother denied having any substance-abuse issues and stated that she tried to get toxicology screenings, but without a referral, it cost from $100 to $250 per screen, and she could not afford it. Mother further testified that if given referrals, she would complete all of her case-plan requirements.

**{¶15}** After mother's testimony, the magistrate took the matter under advisement and issued a decision granting permanent custody to HCJFS on November 16, 2020. The magistrate found that L.Z. could not or should not be placed with either parent within a reasonable time and that a grant of permanent custody was in L.Z's best interest.

**{¶16}** Mother filed objections to the magistrate's decision, arguing that the magistrate failed to act in the best interest of L.Z. because mother and L.Z. were

bonded, mother could not complete the parenting and domestic-violence classes due to COVID, mother was willing to complete services if the magistrate had extended temporary custody, mother was in counseling, and mother had stable housing and income. The objections were overruled by the trial court.

{¶17} Mother appealed and argues, in her sole assignment of error, that the trial court erred by granting HCJFS's motion for permanent custody.

### *Law and Analysis*

{¶18} First, mother argues that the manifest weight of the evidence demonstrated that L.Z. could be placed with mother within a reasonable time, during a single six-month term of temporary custody, and therefore, the trial court improperly ordered a termination of parental rights.

{¶19} A juvenile court's determination on a motion for permanent custody must be supported by clear and convincing evidence. *In re D.M.*, 1st Dist. Hamilton No. C-200043, 2020-Ohio-3273, ¶ 23. Clear and convincing evidence "is evidence sufficient to 'produce in the mind of the trier of fact[ ] a firm belief or conviction as to the facts sought to be established.' " *In re W.W.*, 1st Dist. Hamilton Nos. C-110363 and C-110402, 2011-Ohio-4912, ¶ 46, quoting *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 42. When reviewing a challenge to the manifest weight of the evidence, we must review the record to determine whether the trial court lost its way and committed such a manifest miscarriage of justice that its judgment must be reversed. *Id.*

{¶20} Under R.C. 2151.414(B), the juvenile court may grant a motion for permanent custody if it finds that permanent custody is in the best interest of the child and that one of the five conditions set forth in R.C. 2151.414(B)(1) applies.

{¶21}   As applied to this case, R.C. 2151.414(B)(1) requires a finding that the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents.  *See* R.C. 2151.414(B)(1)(a).  To make such a finding, the juvenile court must examine R.C. 2151.414(E) and determine whether any of the factors apply.  If the court finds that a factor applies, "the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent."  R.C. 2151.414(E).

{¶22}   Here, the trial court found that two factors applied.   Under R.C. 2151.414(E)(1), the court concluded that mother had not addressed the issues and concerns that caused the child to be removed from the home, had failed continuously and repeatedly to substantially remedy the conditions, and that she is not able to provide a safe and secure home.  The court further found that under R.C. 2151.414 (E)(11), mother had had her parental rights involuntarily terminated with respect to five other children and failed to prove by clear and convincing evidence that she could provide a legally secure placement and adequate care for L.Z.

{¶23}   To the extent that mother now challenges the manifest weight of the evidence supporting the court's determination under R.C. 2151.414(E)(1) and (11), we first note that mother did not file an objection to these findings.  A party's failure to file objections to a magistrate's decision waives all but plain error.  *See* Juv.R. 40(D)(3)(b)(iv); *In re A.P.*, 2d Dist. Montgomery No. 28023, 2019-Ohio-139, ¶ 10, citing *In re Etter*, 134 Ohio App.3d 484, 731 N.E.2d 694 (1st Dist.1998).

{¶24}   Moreover, a challenge to the manifest weight of the evidence may not be reviewed for plain error.  *In re A.P.* at ¶ 12 (explaining that "[i]n view of the deference that an appellate court must give to factual findings by the finder of fact,

7

and the weighing of the evidence required in assessing a claim that a judgment is against the manifest weight of the evidence, we conclude that a claim that a judgment is against the manifest weight of the evidence can never rise to the level of plain error.").

{¶25} In determining whether permanent custody is in a child's best interest, the juvenile court must consider all relevant factors, including: (a) the child's interaction with parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; (b) the child's wishes; (c) the custodial history of the child; (d) the child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody; and (e) whether any of the factors under R.C. 2151.414(E)(7) to (E)(11) apply. *See* R.C. 2151.414(D)(1)(a)-(e); *In re S.G.*, 1st Dist. Hamilton No. C-200261, 2020-Ohio-5244, ¶ 36. "No single factor is given greater weight or heightened significance." *In re P.*, 1st Dist. Hamilton Nos. C-190309 and C-190310, 2019-Ohio-3637, ¶ 35.

{¶26} Mother argues that the manifest weight of the evidence did not support the finding that mother could not provide a legally secure placement due to her unaddressed parenting issues because she provided clear and convincing evidence that she could provide a legally secure placement and adequate care for L.Z. within a reasonable period of time.

{¶27} Mother admitted that she could not, at the present time, provide a secure placement for L.Z. Nonetheless, she argues that given an additional six months and HCJFS referrals, she could provide a secure placement. However,

mother never challenged the determination that no reasonable efforts were required. Therefore, HCJFS was not obligated to provide services or referrals.

{¶28} Although mother was currently in therapy, her medical records established that she had not successfully completed her therapy. Additionally, she expressed a desire to complete both, but there is nothing in the record to suggest that she could or would complete the classes within a reasonable period of time. Mother's testimony established that she could not afford the toxicology screens or parenting coaching, and she failed to provide any toxicology screens or engage in parenting coaching while the case was pending. Moreover, her denial of cocaine use during her pregnancy or a history of substance abuse undermined the credibility of her testimony. Mother failed to provide clear and convincing evidence that she would complete the classes within a reasonable period of time. Finally, mother was unable to complete the domestic-violence education due to COVID. However, that was only one component of her prior case plan and completion of this class would not change the fact that she admittedly did not provide clear and convincing evidence that she could provide a legally secure placement and adequate care for L.Z. within a reasonable period of time.

{¶29} The record supports the trial court's finding that a grant of permanent custody was in L.Z.'s best interest.

{¶30} Finally, mother argues that the trial court failed to complete the disposition within 90 days, so a dismissal by the court was mandated. Mother did not raise this issue in her objections, so we review for plain error. *In re H. Children*, 1st Dist. Hamilton No. C-190630, 2020-Ohio-774, ¶ 22.

{¶31} R.C. 2151.35(B)(1) provides that a dispositional hearing "shall not be

held more than ninety days after the date on which the complaint in the case was filed." Absent a timely hearing, "the court, on its own motion or the motion of any party or the guardian ad litem of the child, shall dismiss the complaint without prejudice." R.C. 2151.35(B)(1).

**{¶32}** Here, the complaint was refiled on July 30, 2019, and the dispositional hearing was completed on October 16, 2019, within the 90-day time frame. At the end of the hearing, the magistrate took the matter under advisement, and scheduled an entry date on November 8, 2019, and ultimately continued the case for entry to November 16, 2020. Because the hearing was timely, the trial court was not required to dismiss the complaint.

### *Conclusion*

**{¶33}** We overrule the sole assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**BERGERON** and **CROUSE, JJ.,** concur.

Please note:
The court has recorded its own entry on the date of the release of this opinion.