[Cite as *In re R.H*, 2022-Ohio-3961.]

# IN THE COURT OF APPEALS OF OHIO
# THIRD APPELLATE DISTRICT
# CRAWFORD COUNTY

IN RE:

    R.H.,

NEGLECTED CHILD.

[CARL H. - APPELLANT]
[NICOLE H. - APPELLANT]

CASE NO. 3-22-18

O P I N I O N

---

IN RE:

    H.S.,

ABUSED AND/OR NEGLECTED CHILD.

 [NICOLE H. - APPELLANT]

CASE NO. 3-22-19

O P I N I O N

---

IN RE:

    C.S.,

ABUSED AND/OR NEGLECTED CHILD.

 [NICOLE H. - APPELLANT]

CASE NO. 3-22-20

O P I N I O N

Case No. 3-22-18, 19 and 20

---

**Appeals from Crawford County Common Pleas Court
Juvenile Division**

**Trial Court Nos. C 2215113, C 2215114 and C 2215115**

**Judgments Reversed and Causes Remanded**

**Date of Decision:    November 7, 2022**

---

**APPEARANCES:**

*Adam Charles Stone* **for Appellants**

*Michael J. Wiener* **for Appellee**

**SHAW, J.**

{¶1} Nicole H. and Carl H. (collectively "appellants") bring this appeal from the April 18, 2022 judgment of the Crawford County Common Pleas Court, Juvenile Division, awarding legal custody of their child R.H. to Rhonda R. Nicole also appeals the award of legal custody of her two other children, H.S. and C.S., to Chris and Abbie L.

Case No. 3-22-18, 19 and 20

*Background*

**{¶2}** Nicole H. is the mother of three children: H.S., born in August of 2010, C.S., born in June of 2008, and R.H., born in June of 2016. Michael S. is the father of H.S. and C.S., and Carl H. is the father of R.H.

**{¶3}** On September 22, 2021, complaints were filed alleging that H.S and C.S. were abused and neglected children pursuant to R.C. 2151.031(D), and R.C. 2151.03(A)(2), respectively. That same date a complaint was filed alleging that R.H. was a neglected child pursuant to R.C. 2151.03(A)(2). Following the filing of the complaints, a GAL was appointed for the children and Nicole was appointed counsel.

**{¶4}** On October 18, 2021, the matter proceeded to an adjudication hearing for all three children.[1] Nicole and Carl were present for the hearing but Michael, the father of H.S. and C.S., failed to appear despite receiving notice. The trial court's judgment entry reflects that Nicole admitted that H.S. and C.S. were abused and neglected as alleged, and that Nicole and Carl both admitted that R.H. was neglected as alleged. Based on Nicole and Carl's admissions and their stipulation that the evidence was sufficient to support the allegations, H.S. and C.S. were determined to be abused and neglected children and R.H. was determined to be a neglected child.

---

[1] No transcript of this hearing was provided.

**{¶5}** The trial court's judgment entry indicated that all parties consented to proceed to the dispositional hearing immediately after the adjudication hearing. Regarding the disposition, the trial court determined that it would not be in the children's best interests to have them returned to their prior home with Nicole and Carl at that time. H.S. and C.S. were then placed in the temporary custody of Christopher and Abbie L., a kinship placement. R.H. was placed in the temporary custody of Rhonda R., a relative placement. The children's services agency retained protective supervision over the children. The cases were set for a review hearing on January 4, 2022.

**{¶6}** According to a journal entry filed on January 4, 2022, a "review" hearing was held on that same date as previously scheduled. The entry indicated that all parties agreed to "maintain the status quo." The next "review hearing" was scheduled for April 12, 2022, at 9 a.m.

**{¶7}** On March 10, 2022, Nicole's appointed counsel filed a motion to withdraw. Within a week, that motion was granted. Nicole was appointed a new attorney on March 16, 2022.

**{¶8}** Also on March 16, 2022, "Notice[s] of Hearing" were filed indicating that a hearing would be held on the children's cases on April 12, 2022 "*for purposes of Review*." (Emphasis added.)

Case No. 3-22-18, 19 and 20

{¶9} On March 28, 2022, the agency filed a "Semiannual Administrative Review" in each child's case. The documents indicated that the permanency goal for all three children was to return the children to their parents. The documents stated that the permanency goal did not need to be modified and that the estimated date to achieve the goal was September 17, 2022. In the documents the agency ultimately recommended that the children stay with their temporary custodians while the parents were given more time to complete their case plan goals.

{¶10} On April 11, 2022, a new attorney filed a notice of appearance on behalf of Nicole.

{¶11} On April 12, 2022, the cases proceeded to a "review hearing" as scheduled. What follows is a transcript of what occurred at the "review hearing."

> **THE COURT: * * * This matter came on for review at 9:00, it is now 10:05. Attorney Brown had filed a notice of appearance yesterday, but she has not shown, nor has her client shown. We've been waiting an hour and five minutes. The Court's aware now that Miss Brown, for some reason, is in a three day jury trial, which I think she would have known about that yesterday when she filed her notice of appearance.**
>
> **Let's put on – we're reviewing this case right now. What's going on?**
>
> **MR. WEINER: Your Honor, I just ask to give a brief update as to the status of the case for the Court –**
>
> **BRITTANY BOWIN: So the parents have failed to allow me in the house since December of 2021, therefore I have not been able to monitor the home conditions. However, when I do show up to make my visits, the outside of the home is still deplorable with**

**trash all throughout the yard. There's still a trailer on the property, so it's not known if the family's living in the house or the trailer. When the case opened, they were living in the trailer. At the time I believe the home was unlivable.**

**Parents have completed parenting classes, but they have failed to show the knowledge they've learned in the parenting classes. Carl – he is attending DV counseling, but he did get a letter about two months ago for potential discharge for non-compliance, him not showing up to his appointments. He's not consistent to the appointments. And Nicole is attending DV counseling hopefully.**

**THE COURT: Okay. So also, I'm in possession – the Court wants to take note that I'm in possession of an opinion written by Dr. David Tennenbaum, dated January 28, 2022, which sort of reiterates what you were saying, and the propensity of the parents to comply with the case plan. Or the lack of their failure to comply with the case plan.[2]**

**Mr. Flegm, what's your thoughts?**

**MR. FLEGM: I'm aware and agreed with all of what the caseworker, Brittany, has said. I also have spoken to all three of the boys, but particularly the older two, who are the step children of * * * Carl. And they have expressed repeatedly, as they again did today, that they were in fear of Carl, [and] did not wish to go back home. * * ***

**But there's a pattern of physical and psychological abuse by Carl of the two older boys. * * * I think it's – their wellbeing and best interest is not to be returned to the parents[.]**

**THE COURT: How are the boys doing in their present home situation?**

**BRITTANY BOWIN: They're doing really well. [R.H.] has started displaying some behaviors in school, centralized** [sic]

---

[2] The report is not in the record.

**behaviors. Rhonda is working with him on those behaviors. And working to get him back into counseling. [H.S.] and [C.S.] are doing really well. They're attending counseling. * * * They're currently in sports and doing really well in school.**

**THE COURT:  So Rhonda R[.] has [R.H.]?**

**BRITTANY BOWIN:  Yes.**

**THE COURT: And he's doing well?**

**BRITTANY BOWIN: Yes.**

**THE COURT: And it's a stable home? And does [Rhonda] want that legal and close?**

**BRITTANY BOWIN: Yes.**

**THE COURT: Are they here?**

**BRITTANY BOWIN: Yes.**

**THE COURT: Have they been advised of the – of – and they've read the document we have presented them?**

**BRITTANY BOWIN: We have talked about legal custody during the last two home visits * * * with both caregivers.**

**THE COURT: What about * * * [H.S.] and [C.S.]? They're with Chris and Abbie L[.]?**

**\* \* \***

**    And they're doing well as well?**

**BRITTANY BOWIN: Yes.**

**MR. FLEGM:  Yes, they are.**

**THE COURT: And has Chris and Abbie L[.] expressed a desire to have custody of those boys?**

**BRITTANY BOWIN: Yes.**

**THE COURT: And I guess, has Rhonda expressed a desire to have custody of [R.H.]?**

**BRITTANY BOWIN: Yes.**

**THE COURT: And have they been explained that if they'd get legal custody, it's intended to be a permanent situation, even though it's not permanent, because anybody can come back and review it?**

**BRITTANY BOWIN: Yes.**

**MR. WEINER:  Are they here?**

**MR. FLEGM:  They're across the hall.**

**THE COURT: Why don't we get 'em in.**

**\* \* \***

**THE COURT:  Okay. \* \* \* I understand that these complaints have been filed September 21st, 2021. So this has been a year and a half.**[3]

\* \* \* [Temporary custodians enter the courtroom and the trial court addresses them] \* \* \*

**THE COURT:  Okay. The reason I brought you in here, is because the Guardian has recommended that maybe we should consider legal and close. And I think the – is that what your thinking would be in the best interest of the children as well, Michael?**

---

[3] This is inaccurate.

MR. WEINER:  Yes, Your Honor.

THE COURT:  Okay. Are you in the position to have legal custody of these children?

[TEMPORARY CUSTODIANS]:  Yes.

THE COURT:  Do you want that?

[TEMPORARY CUSTODIANS]:  Yes.

THE COURT:  Do you understand it's intended to be – if I do that – it's intended to be a permanent situation?

[TEMPORARY CUSTODIANS]:  Yes.

THE COURT:  I mean, nothing's gonna be permanent, because the rights of the parents still are in play. They can come back down the road and ask for a review, based on a change of circumstances or whatever.

But this Court finds that this case has been going on since September 21st of 2000 – September 22nd, 2021, and I see no improvement, or no ability to even consider returning these children to the parents given the statements made by counsel and the witnesses here.

There is a document that I want you to read, and if you want to have these children, sign. You're basically assuming responsibility for the care, custody, and control of the children involved respectively. And you're telling me that's what you want?

[TEMPORARY CUSTODIANS]:  Yes.

* * * [Temporary custodians sign the paperwork] * * *

THE COURT:  * * * While [they are signing], Mr. Flegm,  I want you to reiterate what you told the Court off the record concerning * * * where the agency wanted to go out to the home? * * *

**And I think you said that the parents refused to allow it to happen?**

**MR. FLEGM: I don't know how many weeks ago it was, fairly recent – three weeks ago. We had a family team meeting, and at that meeting, Mr. Motter had been released, a new attorney had been appointed by this Court. They refused to accept that new attorney. They were gonna get their own counsel. I never received anything, nobody ever received anything. The Court just got notice of appearance just yesterday.**

**But at the hearing, because the caseworker had been unable to get into the house for many, many months to check the status of it, I said: Okay, we're at this FTM, we're all here right now, let's go out after this hearing. We'll drive out, and we can inspect the house.**

**Carl H[.] just, point blank, in not so many words, said no. I'm going to consult – you can't get in until I consult with an attorney. Absolutely not.**

**THE COURT: Okay. So what I'm hearing then is the Ohio Job and Family Services has been denied access for how many months?**

**MR. FLEGM: December.**

**THE COURT: December. And wanted to go in three weeks ago, and they were denied access again?**

**MR. FLEGM: Right.**

**THE COURT: And you as well, as Guardian?**

**MR. FLEGM: That's correct.**

**THE COURT: Okay. Has the agreements been signed by everybody?**

**BRITTANY BOWIN: Yes.**

**THE COURT: Okay. The record's gonna reflect that Rhonda R[.] has, in fact, signed a statement of understanding for legal custody as well as \* \* \* Abbie and Chris L[.] have also signed the statement of understanding for legal custody.**

**The Court, on its own motion, is going to grant legal custody to both sets of foster – or custodians, and close this file down. And then if you wish to have child support, we can refer it to the Ohio Job and Family Services, the CSEA, later on for child support. \* \* \***

**\* \* \***

**And I find it's in the best interest to grant legal custody to the respective custodians as we discussed in these matters and to close this case.**

**So Michael, will you please prepare a Court order.**

**MR. WEINER: I'll prepare the entry, Your Honor.**

(April 12, 2022, Tr., 3- 13).

**{¶12}** On April 18, 2022, the trial court filed its final judgment entry awarding legal custody of the children to their temporary custodians. The entry began by summarizing the issues with Nicole's attorney and by noting the fact that Nicole and Carl were not present for what was originally styled as a review hearing.

**{¶13}** The entry then stated that the GAL "testified" that C.S. and H.S. were afraid of Carl and that the children did not want to go home. The entry stated that the GAL also "testified" that Nicole and Carl were not cooperative in this case. In

addition, the entry stated that the GAL "testified" that he thought it was in the best interest of the children for legal custody to be awarded to the foster parents.

{¶14} The entry summarized the agency caseworker's statements at the hearing, but it incorrectly stated that the caseworker, too, "testified." Further, the entry stated that both sets of temporary custodians "testified" that the children were doing well in their homes and that the custodians wanted to have the children permanently.

{¶15} After reciting this "testimony," the entry indicated that the trial court was acting within its vested authority pursuant to R.C. 2151.417 to modify disposition at any time. The trial court then granted legal custody of the children to their respective temporary custodians, finding that it was in the children's best interests.

{¶16} However, after reaching its conclusion, the trial court noted that Nicole's attorney had filed a motion to continue in C.S.'s case (but not in the other children's cases), albeit belatedly. The trial court stated that even if the motion had been timely filed and filed in all of the children's cases, the trial court would not have found good cause for a continuance.

{¶17} Nevertheless, the trial court stated that

**the court may reconsider the award of legal custody to the foster parents if within 14 days from the date of this entry Attorney Brown requests an evidentiary hearing and attends the said hearing to present evidence to this Court that would demonstrate**

**that any facts found herein are incorrect. At said hearing the court would also accept evidence regarding custody and the best interest of the children.**

(Doc. Nos. 21, 20, and 21 in their respective files).

{¶18} On April 20, 2022, two days after the trial court's entry was filed, appellants filed a "Motion for Reconsideration or, in the Alternative, Motion to Vacate Judgment Entry of Disposition." The motion argued that the parents were denied procedural due process when the trial court *sua sponte* converted a mere "review hearing" into a legal custody hearing.

{¶19} On April 21, 2022, the trial court overruled the motion, determining that R.C. 2151.417 provided the court with inherent authority to modify disposition of the children at any time, even on its own motion. Further, the trial court reasoned that the parents had notice of the review hearing, thus they had notice that *a* hearing was proceeding.

{¶20} Subsequently Nicole and Carl filed the instant appeals, challenging the trial court's awards of legal custody of the children to their formerly temporary custodians, asserting the following assignment of error for our review.

**Assignment of Error**
**The trial court violated R.C. 2151.353(E)(2) [sic], as well as Appellant's Fifth and Sixth Amendment Rights to the United States Constitution, made applicable to the States through the Fourteenth Amendment and Section 16, Article I of the Ohio Constitution by proceeding upon an oral motion for Legal Custody made by the Court, and not a party to the proceedings,**

**at a scheduled Review Hearing without Appellants being provided proper notice and an opportunity to respond.**

{¶21} In their assignment of error, appellants contend that the trial court erred by awarding legal custody of the children at a "review hearing" without proper notice and an opportunity to be heard. For multiple reasons, we agree.

{¶22} First and foremost, we emphasize that no motion was filed with the trial court requesting that legal custody of the children be granted to their temporary custodians pursuant to R.C. 2151.353(A)(3) or Juvenile Rule 34. Both the statute and the rule require a motion to be filed for legal custody to be granted. Revised Code 2151.353(A)(3) reads as follows:

> **(A)  If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:**
>
> **\* \* \***
>
> **(3)  Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings. A person identified in a complaint or motion filed by a party to the proceedings as a proposed legal custodian shall be awarded legal custody of the child only if the person identified signs a statement of understanding for legal custody**[.]

Similarly, Juv.R. 34(D)(3) reads: "If a child is adjudicated an abused, neglected, or dependent child, the court may \* \* \* [a]ward legal custody of the child to either

parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody[.]"

**{¶23}** Ohio Appellate Courts have held that "it is well settled that a nonparent who seeks legal custody of a child *must* file a motion for legal custody pursuant to R.C. 2151.353(A)(3)." (Emphasis added.) *In re K.F.*, 12th Dist. Clermont No. CA2020-10-061, 2021-Ohio-1183, ¶ 74, citing *In re L.R.T.*, 12th Dist. Butler Nos. CA2005-03-071 and CA2005-04-082, 2006-Ohio-207, ¶ 17 (stating that "[b]ecause appellee failed to file a motion requesting legal custody of L.R.T. at least seven days before the dispositional hearing, the trial court erred as a matter of law in awarding legal custody to her," and noting that compliance with procedural requirements of R.C. 2151.353 and Juv.R. 34 "is mandatory"). The statute and the rule are clear in requiring a motion, and in the absence of one, it was erroneous for the trial court to award legal custody of the children to their temporary custodians.

**{¶24}** Notably, the trial court attempted to circumvent the controlling statute and the juvenile rule by contending that it had inherent authority to review and change its prior orders pursuant to R.C. 2151.417(A) and (B), which read as follows:

> **(A) Any court that issues a dispositional order pursuant to section 2151.353, 2151.414, or 2151.415 of the Revised Code may review at any time the child's placement or custody arrangement, the case plan prepared for the child pursuant to section 2151.412 of the Revised Code, the actions of the public children services agency or private child placing agency in implementing that case plan, the child's permanency plan if the child's permanency plan has been approved, and any other**

**aspects of the child's placement or custody arrangement. In conducting the review, the court shall determine the appropriateness of any agency actions, the safety and appropriateness of continuing the child's placement or custody arrangement, and whether any changes should be made with respect to the child's permanency plan or placement or custody arrangement or with respect to the actions of the agency under the child's placement or custody arrangement. Based upon the evidence presented at a hearing held after notice to all parties and the guardian ad litem of the child, the court may require the agency, the parents, guardian, or custodian of the child, and the physical custodians of the child to take any reasonable action that the court determines is necessary and in the best interest of the child or to discontinue any action that it determines is not in the best interest of the child.**

**(B) If a court issues a dispositional order pursuant to section 2151.353, 2151.414, or 2151.415 of the Revised Code, the court has continuing jurisdiction over the child as set forth in division (F)(1) of section 2151.353 of the Revised Code. The court may amend a dispositional order in accordance with division (F)(2) of section 2151.353 of the Revised Code at any time upon its own motion or upon the motion of any interested party. The court shall comply with section 2151.42 of the Revised Code in amending any dispositional order pursuant to this division.**

{¶25} Contrary to the trial court's analysis of R.C. 2151.417, and the appellee's argument supporting the same, a plain reading of the statute establishes that any changes have to be "based upon the evidence presented at a hearing after notice to all parties[.]" Importantly, the parties here were never notified of a *legal custody hearing* and there was no actual *evidence*[4] presented. The "review hearing"

---

[4] There was no sworn testimony presented at the hearing whatsoever. The legislature has mandated that "[b]efore testifying, a witness shall be sworn to testify the truth, the whole truth, and nothing but the truth." R.C. 2317.30. The oath or affirmation is a prerequisite to the testimony of a witness and a trial court errs by

that was scheduled began with the government merely wanting to "give a brief update as to the status of the case for the Court" before the trial court *sua sponte* turned the matter into a legal custody hearing. The hearing that the appellants were on notice for is entirely different than one where fundamental parental rights are at issue.[5]

**{¶26}** Regardless, completely notwithstanding the prior point, the trial court's contention that R.C. 2151.417 gives it inherent authority to award legal custody on its own motion, without notifying the parents that a legal custody hearing is proceeding, and without taking any actual testimony, directly conflicts with the specific stated requirements of R.C. 2151.353 and Juv.R. 34 cited above. "It is a well settled rule of statutory construction that where a statute couched in general terms conflicts with a specific statute on the same subject, the latter must control." *Humphrys v. Winous Co.*, 165 Ohio St. 45, 48, *State v. Taylor*, 113 Ohio St.3d 297, 2007-Ohio-1950, ¶ 12. Thus we do not agree that R.C. 2151.417 controls here when R.C. 2151.353 had not been complied with.

---

relying on unsworn testimony in reaching its decision. *Allstate Ins. Co. v. Rule*, 64 Ohio St.2d 67, 69-70 (1980).

[5] Although "due process" lacks a precise definition, courts have long held that due process requires both notice and an opportunity to be heard. *In re Thompkins*, 115 Ohio St.3d 409, 2007-Ohio-5238, ¶ 12, citing *Hagar v. Reclamation Dist. No. 108*, 111 U.S. 701, 708, 4 S.Ct. 663 (1884); *Caldwell v. Carthage*, 49 Ohio St. 334, 348 (1892). "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652 (1950).

**{¶27}** We are mindful of the fact that the parents may have shown little cooperation and that the trial court was attempting to do what it felt was in the children's best interests. Nevertheless, statutory procedures providing due process must be followed before legal custody can be properly granted to the temporary custodians. For all of these reasons we find that the trial court erred. Therefore, appellants' assignment of error is sustained.

*Conclusion*

**{¶28}** For the foregoing reasons, the appellants' assignment of error is sustained and the judgments of the Crawford County Common Pleas Court, Juvenile Division, are reversed. These causes are remanded for further proceedings.

*** Judgments Reversed and
Causes Remanded***

**MILLER and WILLAMOWSKI, J.J., concur.**

**/jlr**