**[Cite as *In re J.M.*, 2023-Ohio-2785.]**

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| IN RE: J.M. | : | APPEAL NO. C-230169 |
|  |  | TRIAL NO. F18-1563X |
|  | : |  |
|  | : | *O P I N I O N.* |

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: August 11, 2023

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Michelle Browning*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Raymond T. Faller*, Hamilton County Public Defender, and *Emily Hughes*, Assistant Public Defender, for Appellee Guardian ad Litem,

*Alicia A. Epps*, pro se.

**CROUSE, Presiding Judge.**

{¶1} Appellant Alicia Epps challenges the juvenile court's dispositional orders granting custody of J.M. to the Hamilton County Department of Job and Family Services ("HCJFS") and denying her motion for custody. Epps claims to be J.M.'s paternal grandmother, by virtue of her allegation that her son is J.M.'s biological father, although another man is recognized legally as J.M.'s father. For the following reasons, we overrule Epps's assignments of error and affirm the judgment of the juvenile court.

## I. Factual and Procedural History

{¶2} After a 14-month period of being placed with various family members, J.M. entered the interim custody of HCJFS in February 2020. Although J.M.'s mother initially participated in case-plan services, she eventually stopped participating in services and informed her attorney that she intended to surrender her parental rights to J.M. Meanwhile, J.M. was also provided with services to address concerns about aggressive and defiant behaviors, and over the same time period showed significant behavioral and academic improvements. HCJFS filed its motion for permanent custody in December 2021.

{¶3} In May 2022, Epps filed a motion for custody of J.M. and a motion requesting the court to hold an in-camera interview with then-14-year-old J.M. to determine whether he wanted to stay in foster care or have Epps become his custodian. Epps averred in her filings that she is J.M.'s paternal grandmother and that her son is J.M.'s biological father. Nothing in the record supports Epps's claims regarding the paternity of J.M. Another man is listed as J.M.'s father on his birth certificate and was served as father with notice of the various filings in this case. Epps's son has not

participated in these proceedings in any way.

{¶4} In September 2022, the guardian ad litem ("GAL") also moved for an in-camera hearing to allow J.M. to express his feelings about his placement and visitation with his mother. In October 2022, the magistrate granted the GAL's motion and held an in-camera interview with J.M., in the presence of the GAL and the HCJFS caseworker. At the interview, J.M. expressed his wishes: (1) not to be reunited with his mother; (2) not to be placed in Epps's custody; and (3) to be adopted, preferably by an identified individual associated with his current foster care.

{¶5} The magistrate subsequently held a trial on HCJFS's motion for permanent custody and Epps's motion for custody. Epps was not represented by counsel. The magistrate granted HCJFS's motion and denied Epps's motion. Epps subsequently filed objections. Epps did not file transcripts in support of her objections, and eventually the court ruled on her objections based on the docket entries. The court denied Epps's objections, adopted the magistrate's findings, and entered judgment accordingly. This appeal timely followed.

## II. Analysis

{¶6} Pro se litigants are presumed to know the law and relevant legal procedures, and we hold them to the same standard as litigants who are represented by counsel. *Fontain v. Sandhu*, 1st Dist. Hamilton No. C-200011, 2021-Ohio-2750, ¶ 13, citing *State ex rel. Fuller v. Mengel*, 100 Ohio St.3d 352, 2003-Ohio-6448, 800 N.E.2d 25, ¶ 10. "Pro se appellants are required to comply with the rules of practice and procedure just like members of the bar." *Id.*, citing *Curry v. Mansfield*, 5th Dist. Richland No. 2020 CA 0005, 2020-Ohio-4125, ¶ 6. Although Epps's briefs are somewhat sparse in detail, "[i]n the interest of fairness and justice, we will entertain

all cognizable arguments presented." *Id.*

{¶7} In three assignments of error, Epps argues that the juvenile court erred by denying her right to counsel; by conducting an in-camera interview with J.M.; and by acting contrary to J.M.'s best interests when it denied her motion for custody and granted HCJFS's motion for permanent custody.

## A. *Right to Counsel*

{¶8} In her first assignment of error, Epps argues that the juvenile court denied her right to counsel under Juv.R. 4(A) and R.C. 2151.352. Epps points out in her brief that the court advised her to seek legal representation, and that Legal Aid denied her request for legal services in this matter.

{¶9} Under Juv.R. 4(A), every party has "the right to be represented by counsel." However, the only parties who are entitled to court-appointed counsel are the "child, parent, custodian, or other person in loco parentis * * * if indigent." Juv.R. 4(A); *see* R.C. 2151.352 (providing a right to counsel for the child, parents, custodians, and others acting in loco parentis, and providing for appointed counsel if any listed party is indigent).

{¶10} Even if the court acknowledged Epps's claim to be J.M.'s grandmother, a grandmother who is neither the child's custodian nor otherwise acting in loco parentis does not fall into any of the categories requiring appointment of counsel. *In re L & M Children*, 1st Dist. Hamilton Nos. C-180598, C-180628, and C-180629, 2019-Ohio-5520, ¶ 32. *Compare In re C Children*, 1st Dist. Hamilton No. C-220532, 2023-Ohio-588, ¶ 28 (noting that the statutory right to appointed counsel applied to a grandmother who had previously been granted legal custody). The record does not show any occasion where Epps had custody of J.M., and Epps does not point to any

facts that would support an inference that she has acted in loco parentis. *See State v. Noggle*, 67 Ohio St.3d 31, 615 N.E.2d 1040 (1993), paragraph one of the syllabus, *superseded by statute in part on other grounds as stated in State v. Mole*, 149 Ohio St.3d 215, 2016-Ohio-5124, 74 N.E.3d 368, ¶ 35-37 (defining a person in loco parentis as "a person who has assumed the dominant parental role and is relied upon by the child for support"). Epps had never been granted legal custody of J.M. At most, the record shows that J.M. had occasional, supervised visitation with Epps.

{¶11}  Epps was not entitled to court-appointed counsel. As such, the court did not err when it did not appoint counsel for her. Epps's first assignment of error is overruled.

### B. In-Camera Interview

{¶12}  In her second assignment of error, Epps argues that it was inappropriate to allow J.M. to make a decision regarding his disposition in this case, with particular reference to the in-camera interview held by the magistrate on October 11, 2022. Epps suggests that such an interview and input from J.M. was inappropriate because J.M. was 14 years old at the time and had not yet reached the age of majority.

{¶13} When determining the best interests of the child in a decision on permanent custody, the court is directed to consider, inter alia, "[t]he wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child." R.C. 2151.414(D)(1)(b). An in-camera interview with the child can be an appropriate method for the court to make this determination. *In re Matis*, 9th Dist. Summit No. 16961, 1995 Ohio App. LEXIS 2170, 12 (May 24, 1995), citing *In re Whitaker*, 36 Ohio St.3d 213, 218, 522 N.E.2d 563 (1988).

{¶14}  Further, we note that Epps specifically requested that the court hold an in-camera interview with J.M. to "talk to [J.M.] about [whether] he want[s] to stay in foster care or go with his grandma." Epps cannot now argue that the court should not have held the interview merely because J.M. had not yet turned 18, when any custody decision would have become moot.

{¶15}  The juvenile court did not err by holding an in-camera interview with J.M., nor by taking his wishes into account as one factor among many in its decision on his disposition. Epps's second assignment of error is overruled.

### C. Best Interests of the Child

{¶16}  Epps's third assignment of error challenges the juvenile court's best-interests finding with regard both to her motion for custody and HCJFS's motion for permanent custody.

{¶17}  "After a child is adjudicated abused, neglected, or dependent, the trial court may award legal custody of the child to 'any other person,' who * * * has filed a motion requesting legal custody of the child." *In re L & M Children*, 1st Dist. Hamilton Nos. C-180598, C-180628, and C-180629, 2019-Ohio-5520, at ¶ 64, quoting R.C. 2151.353(A)(3). The juvenile court adjudicated J.M. dependent and neglected in July 2020. Epps filed her petition for custody in May 2022, prior to the court's disposition of HCJFS's motion for permanent custody.

{¶18}  "When determining to whom legal custody should be awarded, the juvenile court should base its determination on the best interests of the child." *In re L & M Children* at ¶ 64. Although there is no specific guidance on factors the court must consider when deciding a private custody motion, the factors listed in R.C. 2151.414(D)(1) are a "useful framework" in guiding the court's best-interests decision.

*Id.* This court reviews the juvenile court's custody determination under an abuse-of-discretion standard. *Id.* at ¶ 65.

**{¶19}** This court's review is constrained because Epps did not file a transcript in the juvenile court for purposes of the court's review of the magistrate's hearing nor in this court on appeal. "[I]n the absence of a properly filed transcript, the trial court and this court must presume the regularity of the magistrate's factual findings." *In re Spencer*, 1st Dist. Hamilton No. C-070321, 2008-Ohio-2844, ¶ 11. "[W]e cannot consider on appeal evidentiary materials that were not properly before the trial court and are thus not properly a part of the record on review. We therefore presume the regularity of the proceedings in regard to the challenged factual findings." *Id.* However, "we must still review the proceedings below to ensure that the trial court had properly 'undertake[n] an independent review * * * to ascertain that the magistrate * * * appropriately applied the law' to the facts." *Id.*, quoting Juv.R. 40(D)(4)(d).

**{¶20}** The magistrate found that the best interests of J.M. supported custody to HCJFS, and not to Epps. The court considered all of the statutory factors under R.C. 2151.414(D)(1) and found that each of the factors supported custody to HCJFS and did not support custody to Epps.

**{¶21}** Under R.C. 2151.414(D)(1), a court deciding whether to grant permanent custody to a public children services agency "shall consider all relevant factors, including, but not limited to, the following":

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers[, and others];

(b) The wishes of the child, as expressed directly by the child or through

the child's guardian ad litem, with due regard for the maturity of the

child;

(c) The custodial history of the child * * *;

(d) The child's need for a legally secure permanent placement and

whether that type of placement can be achieved without a grant of

permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section

apply in relation to the parents and child.

{¶22} The juvenile court found that while Epps testified as to her belief that her son is J.M.'s father, her son has not taken any steps to form a relationship with J.M. or pursue custody. J.M. has a "poor relationship" with Epps and other members of her household. J.M. does not return Epps's calls or texts and does not want to visit with her. Epps acknowledged in her testimony that she does not have space in her home for J.M. Epps has taken no steps toward obtaining a home study. Epps is unfamiliar with J.M.'s mental-health needs, and despite J.M.'s behavioral progress and emotional stability developed in recent months, she would seek to get him off his mental-health medication. *See In re A.B.*, 1st Dist. Hamilton No. C-220577, 2023-Ohio-589, ¶ 33 (finding that father's failure to address the child's mental-health needs militated against a legally secure placement with father).

{¶23} Within the scope of our record on appeal, nothing contradicts the juvenile court's best-interest findings as to Epps's custody motion. Therefore, the juvenile court did not abuse its discretion in denying Epps's motion for custody.

{¶24} To the extent that Epps challenges the court's entry granting permanent custody to HCJFS, Epps's challenge must fail. While a relative who sought custody of

8

a child may challenge the denial of her own motion, she lacks standing to challenge the court's termination of the parents' rights and award of custody to HCJFS. *In re L & M Children*, 1st Dist. Hamilton Nos. C-180598, C-180628, and C-180629, 2019-Ohio-5520, at ¶ 48-50.

**{¶25}** We overrule Epps's third assignment of error.

### III. Conclusion

**{¶26}** For the foregoing reasons, we affirm the judgment of the juvenile court.

Judgment affirmed.

**WINKLER** and **KINSLEY, JJ.**, concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.