[Cite as *In re E.A.*, 2025-Ohio-5573.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## CRAWFORD COUNTY

IN RE:

E.A.,

ADJUDICATED DEPENDENT
CHILD.

[VENESSA A. - APPELLANT]
[SCOTT A. - APPELLANT]

CASE NO. 3-25-02

OPINION AND
JUDGMENT ENTRY

Appeal from Crawford County Common Pleas Court
Juvenile Division
Trial Court No. C 2215051

**Judgment Affirmed**

**Date of Decision: December 15, 2025**

APPEARANCES:

*Kristin E. Brown* for Appellant Venessa A.

*Brandon Gobrecht* for Appellant Scott A.

*Michael Wiener* for Appellee

*Brad Starkey*, Guardian Ad Litem

**MILLER, J.**

{¶1} Father-appellant, Scott A., and mother-appellant, Venessa A., appeal the December 12, 2024 judgment of the Crawford County Court of Common Pleas, Juvenile Division, committing E.A. into the legal custody of the child's maternal grandmother and step-grandfather, Pam B. and Dan B. For the reasons that follow, we affirm.

{¶2} Scott and Venessa are the natural parents of E.A. (born 2014). On April 19, 2021, the Crawford County Department of Job and Family Services (the "Agency"), through the Crawford County Prosecuting Attorney's Office, filed a complaint in the trial court alleging E.A. was a dependent child pursuant to R.C. 2151.04(C). Following the filing of the complaints, Pam was granted temporary custody of E.A., subject to the Agency's protective supervision. A guardian ad litem ("GAL") was appointed for E.A. on April 19, 2021.

{¶3} At the adjudication hearing on May 18, 2021, pursuant to the parents' admissions, the trial court found E.A. was a dependent child as defined in R.C. 2151.04(C). Following the disposition hearing on May 25, 2021, the trial court formally committed E.A. to the temporary custody of Pam and Dan subject to the Agency's protective supervision.

{¶4} Relevant to this appeal, on February 8, 2022, Venessa filed a motion for legal custody of E.A. In a motion filed on August 12, 2022, Scott also sought legal

custody of E.A., or in the alternative, Scott asked the trial court to place E.A. in the legal custody of his parents or sister. On November 17, 2022, the Agency filed a motion to commit E.A. to the legal custody of Pam and Dan and close the case. A hearing on the pending motions was held on August 3, 2023 and July 12, 2023. In a judgment entry filed on August 9, 2023, the trial court overruled the parents' motions for a change in custody and issued an interim order that E.A. would remain in the temporary custody of Dan and Pam. Further, the trial court ordered that the case would not be closed and the matter would be reviewed in six months.

{¶5} Scott filed an appeal from the August 9, 2023 judgment entry. However, on September 9, 2024, this court dismissed Scott's appeal for lack of a final, appealable order and we remanded the matter for the trial court to resolve any pending matters and issue a final, appealable order. *See In re E.A.*, 2024-Ohio-4449, ¶ 14 (3d Dist.).

{¶6} On September 11, 2024, the trial court issued a judgment entry setting the matter for a "review hearing/pretrial to discuss any changes that may be appropriate to the case plan, custody, and the motions filed." The judgment entry stated, in relevant part:

> Given it has been over 14 months since the last evidentiary hearing it is the Order of this Court, that all parties including [the Agency] along with the custodians [Pam and Dan] attend this review hearing and to be prepared to discuss all matters and any potential changes needed to the interim orders of this Court. Furthermore the Guardian ad litem shall file an update report 10 days before said hearing.

(Sept. 11, 2024 Judgment Entry).

**{¶7}** The original hearing date was rescheduled, due to the unavailability of a party, and another notice of hearing was filed on September 25, 2024 setting a new date for the "Review Hearing."

**{¶8}** On September 26, 2024, Scott's court-appointed attorney filed a motion for leave to withdraw from representation of Scott. On September 30, 2024, the trial court granted the motion but declined to appoint another attorney to represent Scott citing the number of attorneys the court had previously appointed and Scott's actions to delay the case. Later that day, Scott filed a pro se motion asking the trial court to appoint legal counsel that "knows how to effectively communicate" with him due to his "mental/physical disabilities that have been provoked, abused, [and] neglected during this matter since inception."

**{¶9}** On November 26, 2024, the matter came before the court for the previously scheduled hearing. Among those present at the hearing were Scott, representing himself, and Venessa's attorney. However, Venessa was not present at the commencement of the hearing. Venessa's attorney made a motion to continue the hearing due to her client's absence, noting that Venessa was on her way to the hearing.[1] Scott also made a motion to continue the hearing due to his lack of

---

[1] The record indicates that the hearing commenced approximately 20 minutes after the 1:30 scheduled start time. (Nov. 26, 2024 Tr. at 8-10). The record suggests that Venessa arrived at the hearing at 2:37 p.m. (*Id.* at 54-55). Upon her arrival, Venessa's counsel made another motion to "reset" the hearing due to Venessa's late arrival, which the trial court denied. (*Id.* at 56-57).

-4-

representation. The trial court denied both motions to continue and the hearing commenced.

**{¶10}** At the conclusion of hearing, the trial court orally granted the Agency's motion for legal custody and placed E.A. in the legal custody of Pam and Dan. The trial court granted supervised visitation for the parents through electronic means until such time as the parents provided evidence that they "actively engaged" with substance abuse counseling and tested negative for illicit drugs for a period of 90 days. The trial court filed its judgment entry memorializing its findings on December 12, 2024.

**{¶11}** Venessa and Scott filed notices of appeals on January 10, 2025. They each raise one error for our review.

### Venessa's Assignment of Error

**The trial court violated O.R.C. § 2151.353(E)(2) [sic], as well as Appellant's Fifth and Sixth Amendment Rights to the United States Constitution, made applicable to the States through the Fourteenth Amendment and Section 16, Article I of the Ohio Constitution by granting a Motion for Legal Custody at a scheduled Review Hearing without Appellants being provided proper notice and an opportunity to respond.**

**{¶12}** In her assignment of error, Venessa argues that the trial court violated her right to due process. Specifically, Venessa contends that because the scheduling entries filed by the court referenced the November 26, 2024 hearing as a "review hearing," she did not have proper notice that the trial court would be considering matters related to the Agency's motion for legal custody. Accordingly, Venessa

claims that because she did not have proper notice of the scope of the hearing, the trial court erred by granting the Agency's motion for legal custody following the hearing. For the reasons that follow, we disagree.

{¶13} In support of her contention, Venessa relies heavily on *In re R.H.*, 2022-Ohio-3961 (3d Dist.), a case in which this court found that the trial court erred by granting legal custody to the Agency following a "review hearing." Notably, in that case, the parties appeared for a "review hearing" in a case in which no motion for legal custody was pending.

{¶14} During the hearing, the trial court in *In re R.H.* sua sponte transformed the hearing into a legal custody hearing. In our opinion reversing the trial court's decision granting legal custody to the Agency, we noted that, critically, "the parties . . . were never notified of a legal custody hearing[.]" *In re R.H.* at ¶ 25. In that case, we held that:

> The "review hearing" that was scheduled began with the government merely wanting to "give a brief update as to the status of the case for the Court" before the trial court *sua sponte* turned the matter into a legal custody hearing. The hearing that the appellants were on notice for is entirely different than one where fundamental parental rights are at issue.

*Id.* at ¶ 25.

{¶15} However, the instant case is clearly distinguishable from *In re R.H.* as the procedural posture is significantly different as, in the instant case, the Agency

had a motion for legal custody pending. Furthermore, here, the parties were put on notice of the scope of the November 26, 2024 hearing.

{¶16} Notably, in the trial court's August 9, 2023 judgment entry granting legal custody to the Agency, the trial court noted that it would review the matter in six months. Scott's subsequent appeal of the August 9, 2023 decision resulted in a delay in the proceedings while the appeal was pending. At the conclusion of the prior appeal, to which both Scott and Venessa were parties, we clearly stated: "[W]e remand the case for the trial court to resolve any pending matters and issue a final, appealable order." On September 11, 2024, several days after this court issued its judgment entry dismissing Scott's appeal, the trial court issued an entry setting the matter for a hearing. The trial court's entry stated, in pertinent part:

> This matter shall be set for a review hearing/pretrial to discuss any changes that may be appropriate to the case plan, custody and motions filed.

> Given it has been over 14 months since the last evidentiary hearing it is the Order of this Court, that all parties including the [Agency] along with the custodians [Pam and Dan] attend this review hearing and to be prepared to discuss all matters and any potential changes needed to the interim orders of this Court. Furthermore the Guardian ad litem shall file an update report 10 days before said hearing.

(Sept. 11, 2024 Judgment Entry).

{¶17} As a result of the hearing notice, the Agency and Scott began filing subpoenas for witnesses and evidence. Indeed, several of the individuals that Scott attempted to subpoena filed motions to quash, which the trial court granted.

Notably, in its judgment entry granting the motions to quash, which was served on all parties, the trial court stated, in relevant part:

> The Court notes further that the hearings on the pending motion filed by the [Agency] to grant custody to [Pam and Dan] and to close this case were tried and heard on April 3, 2023 and July 12, 2023. Both parents were present for both hearings with counsel thus the doctrine of res judicata applies and thus the only evidence that is relevant and will be considered is what has occurred since July 12, 2023.
>
> Clearly the above two individuals would have no personal knowledge nor any records that would be relevant to the issue before this court. Therefore the subpoenas issued for [school administrators at E.A.'s prior school] are hereby quashed.

(Nov. 21, 2024 Judgment Entry).

**{¶18}** At the commencement of the November 26, 2024 hearing, Venessa's counsel made a motion for a continuance on the grounds that Venessa was not yet present at the hearing. Notably, Venessa's attorney did not indicate that she was unaware of the scope of the hearing, rather the motion was predicated on Venessa's tardiness and the complications that resulted therefrom, such as counsel's lack of opportunity to confer with her client prior to the hearing. Although the trial court denied Venessa's counsel's motion for a continuance, Venessa did eventually arrive at the hearing, took the stand, and testified. Further, Venessa's testimony did not express confusion regarding the scope of the proceeding. Unlike the situation in *In re R.H.,* the record in this case does not demonstrate a lack of understanding of the scope of the hearing by any of the participants.

{¶19} Accordingly, we find that, given the totality of the circumstances, the trial court did not err by following this court's mandate to resolve any pending matters (such as the Agency's pending motion for legal custody) and issue a final order, despite the hearing being styled as a "review hearing." Crucially, the trial court, on several occasions, in writing, put the parties on notice of the parameters and scope of the hearing. Thus, Venessa and her counsel would have been aware of the potential need to present testimony in order for the trial court to make a final decision on the Agency's pending motion for legal custody. We find Venessa's contention that the trial court violated her due-process rights to be unavailing.

{¶20} Venessa's assignment of error is overruled.

### Scott's Assignment of Error

**The trial court erred by abusing its discretion in not appointing Appellant-Father an attorney for the review hearing as asked for by Appellant-Father. If the trial court did not err in appointing an attorney for Appellant-Father, then the Court erred in not appointing Standby Counsel for Appellant-Father.**

{¶21} In his assignment of error, Scott argues that the trial court erred by not appointing another attorney for him after his previous counsel resigned.

{¶22} The record indicates that multiple attorneys had been appointed for Scott during the pendency of the case. A review of counsels' motions seeking leave to withdraw from representation of Scott shows that Scott's behavior of alienating his court-appointed counsel through his actions and behavior had been an ongoing issue throughout the case. Scott would routinely make accusations relating to the

character and capability of his appointed attorney and then claim the attorney did not properly represent him. For instance, on July 27, 2021, his first court-appointed attorney filed a motion seeking leave to withdraw from the case due to Scott's behavior and unrealistic expectations. His counsel alleged that Scott had repeatedly requested that counsel appeal issues which were not yet ripe for appeal. When counsel tried to discuss the matter with Scott, he refused to come to counsel's office, repeatedly hung up on him, and repeatedly made allegations disparaging counsel's performance "coupled with threats" and reportedly filed a Civil Rights Complaint with the U.S. Department of Justice claiming a violation of his constitutional rights.

{¶23} On December 6, 2021, Scott's second court-appointed counsel filed a motion to withdraw from representation as a result of Scott accusing counsel of "intentionally misleading him." Counsel was able to repair the relationship with Scott and the trial court re-appointed him to the instant case. Yet, on January 10, 2022, counsel filed another motion to withdraw after he received an email from Scott informing counsel that he was "fired from representing him."[2]

{¶24} Similarly, Scott's third court-appointed attorney filed a request to withdraw from representation citing "irreconcilable differences" between herself and Scott. Additionally, counsel noted that "the client . . . believe[s] he will not have a fair trial in Juvenile Court because of [counsel's] appointment."

---

[2] Ultimately, Scott's second court-appointed counsel filed a third motion to withdraw from representation after counsel resigned his law license to the State of Ohio for reasons unrelated to the instant case.

{¶25} On September 26, 2024, Scott's fourth attorney filed a motion to withdraw from further representation. Specifically, Scott's attorney stated that Scott "started to question my loyalty and integrity to him and asking me to relay to him in exacting detail conversations" he had with the court, guardian ad litem, and other attorneys in the case. According to the attorney, Scott's actions went to the "core of [their] relationship" and affects counsel's "ability to maintain an effective working relationship with [Scott]." The court granted counsel's motion to withdraw and declined to appoint further legal counsel to represent Scott.

{¶26} In the trial court's September 30, 2024 judgment entry granting Scott's counsel's motion to withdraw, the court found that Scott "has again alienated his counsel of record to such a degree that [counsel's] motion is well taken." Additionally, the trial court found that Scott's actions with respect to his counsel "are consistent with his past conduct and that his actions are designed to simply further delay this matter and to resist the authority of this court to proceed." The court then noted "[g]iven that [Scott] has now had 5 attorneys[3] on this case and has engaged in multiple other acts as referred to in previous judgments to delay this case this matter will move forward without further appointment of a sixth attorney for [Scott]."

---

[3] At the time of the September 30, 2024 judgment entry, four different attorneys had been appointed to represent Scott. Scott's second attorney made a motion for leave to withdraw which was granted; however, pursuant to the agreement of Scott and that attorney, the attorney was subsequently reinstated as counsel.

{¶27} Scott maintains that the trial court erred by not providing yet another court-appointed attorney to represent him at the November 26, 2024 hearing. Notably, in his November 14, 2024 pro se filing, Scott stated that despite appointing four previous attorneys, "the court has yet to provide him with a proper attorney since the beginning of this case."

{¶28} The Supreme Court of Ohio has ruled that an indigent parent has the right to court appointed counsel at a permanent custody hearing. *In re R.K.*, 2018-Ohio-23, syllabus. Ohio appellate courts uniformly interpret this to mean that parents facing the permanent termination of their parental rights also are guaranteed the right to the effective assistance of counsel." *In re K.P.*, 2025-Ohio-4942, ¶ 27 (4th Dist.). *See In re E.C.*, 2015-Ohio-2211, ¶ 40 (3d Dist.) ("In permanent custody proceedings, where parents face losing their children, we apply the same test as the test for ineffective assistance of counsel in criminal cases."). Ohio appellate courts do not, however, agree whether this principle extends to parents in "legal custody cases." *In re K.P.* at ¶ 28.

{¶29} Regardless, we need not resolve this issue. Even if we agree that a parent is entitled to court-appointed counsel in a legal custody proceeding, Scott is not entitled to a reversal of the trial court's decision granting legal custody of E.A. to Pam and Dan.

**{¶30}** "A parent can expressly or implicitly waive the right to counsel." *In re Adoption of A.K.H.*, 2025-Ohio-1922, ¶ 8 (5th Dist.). "In addition to an express waiver of counsel, a parent's or legal custodian's waiver of counsel may also be inferred 'where "the total circumstances of the individual case, including the background, experience and conduct of the parent" indicate that the parent has waived the right to counsel.'" *In re C Child*, 2023-Ohio-588, ¶ 17 (1st Dist.), quoting *In re M Children*, 2019-Ohio-484, ¶ 15 (1st Dist.), quoting *In re Rachel G.*, 2003-Ohio-1041, ¶ 14 (6th Dist.).

**{¶31}** This court has reviewed a trial court's decision whether to appoint substitute counsel for parents in the context of a permanent termination of parental rights for an abuse of discretion. *In re W.J.*, 2022-Ohio-2449, ¶ 36 (3d Dist.). However, an appellate court reviews de novo whether an individual waived their right to counsel. *State v. Smallwood*, 2020-Ohio-5556, ¶ 9 (6th Dist.); *In re W.J.* at ¶ 35. "In a totality of the circumstances review, we must consider all of the particular facts of the case to ascertain whether an inferred waiver of counsel occurred." *In re C Child* at ¶ 17. Courts have found an implied waiver of counsel "where a parent fails to maintain contact with counsel, fails to appear for scheduled hearings despite receiving notice of such, and fails to cooperate with counsel and the court[.]" *In re Rachel G.* at ¶ 14.

**{¶32}** Upon review of the record, we find that in the particular circumstances of the instant case, the trial court did not err by not appointing counsel to represent

Scott at the November 26, 2024 hearing. Scott had a demonstrated history of not working with his counsel, filing his own pro se motions and not complying with the case plan or court orders. For instance, following a hearing, on February 23, 2023, the trial court filed a judgment entry on several pending motions. In that judgment entry, the trial court noted that Scott filed "no less than 39 [pro se] pleadings" in the instant case despite being represented by counsel. The trial court also noted that seven motions were filed by or on behalf of Scott to remove his various attorneys over the course of the case. The trial court concluded that it is "evident from the motions and hearings that Scott has had extreme conflict with his attorneys because he does not like the way they have handled this case on his behalf[.]" As a result of Scott's actions throughout the case, the trial court found that "Scott's actions are intended to cause delay in this case and further finds Scott is a vexatious litigator[.]"

{¶33} Although Scott claims that he did not intend to waive any right he may have had to court appointed counsel, his conduct belies this claim. We find that, by his behavior throughout the case, including continually seeking new counsel, demonstrated lack of cooperation with counsel, disparaging comments and repeated accusations against counsel, incessant filing of voluminous pro se motions despite his representation by counsel, the trial court did not err by finding that Scott's actions were intended as a delay tactic.

{¶34} Accordingly, we find substantial justice has been provided to Scott and the trial court did not err by declining to appoint yet another attorney[4] to represent Scott at the November 26, 2024 hearing.

{¶35} Scott's assignment of error is overruled.

{¶36} Having no error prejudicial to the appellants herein in the particulars assigned and argued, we affirm the judgment of the Crawford County Court of Common Pleas, Juvenile Division.

***Judgment Affirmed***

**WALDICK, P.J. and WILLAMOWSKI, J., concur.**

---

[4] We note that the trial court did, in fact, subsequently appoint an attorney to represent Scott in the instant appeal.

Case No. 3-25-02

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellants for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

Mark C. Miller, Judge

Juergen A. Waldick, Judge

John R. Willamowski, Judge

DATED:
/jlm

-16-